## MONTROSS and STILWELL *v.* R. C. BYRD.

Where an appeal was taken, by motion, on the 31st of March, from a judgment rendered on the 24th of the same month, and the appeal bond was filed on the 2d of April ensuing ;

*Held:* That the appeal was properly taken, and would not be dismissed; and that the service of citation of appeal was not necessary, the appeal having been made by motion.

Where a firm, of which the defendant was a member, had placed in the hands of the garnishees certain notes which had originally belonged to the defendant, but had been by him transferred to his firm, the garnishees have the right to claim, out of the proceeds, a debt due to them by the firm, in preference to an attaching creditor on an individual debt of one of the firm; but the defendant having purchased the interest of his co-partner in the concern, the attaching creditor has the right to hold any surplus which may remain after the debt due to the garnishees has been paid.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. In this case, the principal contest arose between the plaintiffs and *Gray* and *Campbell,* the garnishees.

*Hoffman* and *Ogden,* for plaintiffs.    *Hunton* and *Bradford,* for garnishees.

The judgment of the court was pronounced by

SLIDELL, J. The appellees have moved to dismiss this appeal, upon the ground, that the appeal bond was not filed until the 2d April, 1851, and no citation was served upon the appellees. It appears, that the judgment was signed on the 24th March, 1851: and on the 31st of March, upon motion, an order was entered upon the minutes; allowing the plaintiffs an appeal, returnable in this court on the fourth Monday of the ensuing April: "the execution of said judgment to be stayed, on said plaintiffs giving bond in the sum of $5700, with good and solvent security, conditioned as the law directs." The act of 1843, amendatory of the 573d and 574th articles of the Code of Practice, dispensed the party desiring an appeal, if he made a motion in open court at the same term, &c., from the necessity of presenting a formal petition and formally citing the appellee; which latter requisition had given rise to much inconvenience in practice. Upon this salutary statute we have had frequent occasions to remark. It is only necessary now to observe, that we do not understand it as involving any new provision in relation to the time of filing the appeal bond. In this case, the bond for a suspensive appeal was seasonably filed. The appellee's motion cannot be sustained.

Upon the merits, the case presents a controversy between the plaintiffs, as creditors of *Byrd,* and the garnishees, who assert themselves to be creditors of the commercial firm of *Southwick* and *Byrd,* of Arkansas.

*Gray* and *Campbell* were garnisheed in a suit, by attachment, brought by the plaintiffs against *Byrd,* upon his individual obligations held by them. The garnishees were cited in January, 1850. At this time, they held in their hands four notes of one *Newton,* dated in Arkansas, in January, 1848, in favor of and endorsed by *Byrd,* and also by *Southwick* and *Byrd.* These notes were originally the individual property of *Byrd,* but were put by him into the firm. In March, 1848, *Southwick,* acting in the partnership name, pledged these notes, at New Orleans, to *Gray* and *Campbell,* to secure them for their accommodation acceptances of certain bills, drawn by *Southwick* and *Byrd,* which the acceptors subsequently paid. They have received only a partial reimbursement. The transaction was fair; and the only objection that can be made to it is, that the pledge was by private writing, and not by notarial act, as directed by art. 3125 of the Code. A few weeks afterwards, *Byrd* and *Southwick* dissolved their partnership. By the articles of dissolution, *Byrd* took all the partnership assets, and agreed with *Southwick,* to pay all the debts; and *Southwick* was to have, in consideration of his retirement and abandonment of interest, $1000 in goods from the concern, and $500 cash, and was to be credited for the amount of his private account. *Byrd* immediately wrote to *Gray* and *Campbell,* informing them of

the dissolution and its terms; but the letter contained no suggestion of any request that they would convert their partnership into an individual claim. In a subsequent letter, he reiterates the information; and uses language inconsistent with the idea that *Gray* and *Campbell* were expected to release the securities received from the partnership, or abandon their position as partnership creditors. In the reply of *Gray* and *Campbell*, there is nothing to intimate such an intention. *Gray* and *Campbell* still kept in their books an account with *Southwick* and *Byrd*, which showed a balance, at the date of their answers as garnishees, of $4129 88; and also opened an account with *Byrd*, for subsequent individual transactions with him, which showed a balance of $278 85. In one of his letters, he had requested them to inform him of *Southwick* and *Byrd's* liabilities to their house; and an account was offered in evidence by the plaintiffs, which they got from *Byrd*, and which appears to have been rendered by *Gray* and *Campbell*, in 1849, to him. It is headed, "*R. C. Byrd* in account with *Gray* and *Campbell*," and comprises all the items of his indebtedness, both partnership and individual.

We fully concur with the district judge in the opinion, that, as to *Gray* and *Campbell*, the four notes are to be considered as partnership property, when they were delivered to them as security; whatever may have been the circumstances under which *Byrd* put them into his partner's hands. *Byrd* made no objection to the pledge by the partnership, although he became soon after cognizant of it; and clearly could not, having endorsed the notes in blank and put them into his partner's hands.

We also concur fully with the conclusion of the district judge, that the evidence is insufficient to show an abandonment by *Gray* and *Campbell* of the partnership liability, or of the security placed in their hands in the shape of assets which, as to them, are clearly partnership assets. To convert a partnership debt into a separate debt of one partner, the intention so to do must clearly appear. There must be a deliberate and mutual assent of creditor and debtor to such conversion. Nay, more; a partnership creditor may take the separate liability of one partner, without necessarily thereby extinguishing the partnership liability. Courts will look in all such cases to the intention, as deducible from all the circumstances. Novation is not presumed. The renunciation of substantial and valuable rights is not presumed. This familiar rule is forcibly stated by Merlin. Pour que des faits emportent renonciation, il faut qu'il en résulte une volonté manifeste de renoncer, c'est-à-dire, que ces faits soient directement et à tous égards contraires au droit ou au privilége dont il s'agit.

But it is said, the act of pledge is informal, and does not protect the party ngainst an attaching creditor. That is true: but the garnishees have another protection, and that is in the fact that they are creditors of the partnership of *Southwick* and *Byrd;* and the notes in their possession are, so far as the garnishees are concerned, assets of that partnership. They can therefore invoke, in support of their possession, the equity of the 2794th article of our Code, which declares, that the partnership property is liable to the creditors of the partnership, in preference to those of the individual creditors.

We think, however, that under the circumstances, the judgment should have made some reservation in favor of the plaintiffs. The notes represent a capital sum of $7444 38. *Southwick* has transferred all his rights to *Byrd;* subject, however, it would seem, to the equity of having the partnership property applied to the payment of its debts. The claim of the garnishees is only for $4129 88, with interest at eight per cent from 9th March, 1849. It does not

appear that there are other outstanding partnership debts. On this account, we think it equitable to modify the decree, so as to preserve the seizure upon any balance that may remain in the hands of the garnishees, after collecting the notes and paying themselves.

It is therefore decreed, that the judgment be so amended as to reserve the rights of the plaintiffs, under the attachment and garnishment, upon any surplus that may remain in the hands of the garnishees, after applying the proceeds of the collection of the four notes of *Thomas W. Newton*, described in the informal instrument of pledge which is of record in this cause, to the payment of the claim of said garnishees against *Southwick* and *Byrd*, for $4129 88, and interest thereon at the rate of eight per cent per annum, from the 9th of March, 1849, until paid, and reasonable expenses of such collection; this reservation in favor of plaintiffs being also subject to any rights of said *George W. Southwick* or others, creditors of the partnership of *Southwick* and *Byrd*. It is further decreed, that the judgment of the district court, so amended, be affirmed; the costs of appeal to be paid by the plaintiffs.