## ZENON DEMORUELLE *v.* P. P. SUGG et al.

Dirt eating is not a disease, but merely the cause of a disease. It is not, therefore, necessarily a redhibitory vice, which should annul the sale of a slave.

APPEAL from the District Court of Iberville, *Burk,* J. *Deblieux* and *Taylor,* for plaintiff. *Zenon Labauve,* for defendant. The judgment of the court *(Slidell,* J., absent,) was pronounced by

PRESTON, J. The defendants, being sued for the amount of a promissory note, plead that the same, with two others, amounting in the aggregate to nine hundred and thirty dollars, were given for the price of a slave named *Elie,* purchased at the sale of the effects of *François Lebeau,* deceased; alleging that the consideration of the notes failed, because the slave was affected, at the time of the sale, with redhibitory diseases, to wit, the habit of dirt eating and the dropsy, of which he died. For which reason, they pray that the sale may be rescinded, and the three notes cancelled, with damages.

The sale took place on the 18th of March, 1848, and the slave died on the 1st of July, 1849, more than fifteen months afterwards. In the meantime, he was not tendered back; no suit was brought to rescind the sale, nor does it appear that the plaintiff was ever notified of any complaint on account of the health of the slave. No physician was employed to attend on the slave until five months after the sale. Such facts, raise a strong presumption that the slave was not seriously affected with disease, at the time of the sale. The habit of dirt eating is not necessarily a redhibitory vice. It is the cause of disease, but not the disease itself.

The disease caused by the habit, is dropsy. The mind naturally inclines to the belief, that when this disease has become incurable, it would run its course in less than fifteen months, and would exhibit symptoms, which required medical aid, in less than five months after arriving at the incurable stage.

The evidence in the case strongly confirms these impressions. *Dr. Mann*, a physician of forty years' standing, says that the state and condition of the health of the slave was good; that, at the time of the sale, he was sound in health and body; that he was not affected with the dropsy, and does not know that he ever ate dirt; that he formed his opinion of the health of the slave by the frequent opportunities he had to see him, being, for a long time previous to the sale, the physician of the plantation where he was, and the family physician of *Mr. Lebeau*, whose slaves he attended, and continued to attend, from his death until the time of the sale.

*Valevier Bergeron* knew the slave; saw him at the time of the sale, and he appeared in good health. He considered him one of the best working hands on the plantation of the late *Mr. Lebeau*.

Four other witnesses, living close to the plantation, knew the slave well; knew nothing of his being addicted to dirt eating, and to them he appeared healthy.

In opposition to this testimony, the defendants offer that of *Dr. Hornsby*, who saw the slave about a month after the sale, and *Dr. Garrett*, who was called to attend him professionally about five months after the sale. They express the opinion that he must have been in the habit of eating dirt for years; that he had the dropsy, of which disease he died, in July, 1849. The first thinks the disease could not have developed itself in a month, to the extent which was exhibited when he saw the slave; that he had an approaching dropsy of the feet, which is an advanced stage of the disease. It seems strange, then, that he should have lived fourteen months afterwards.

The other physician attended the slave a month or six weeks, in August or September, 1848, and is of opinion, that the disease was in an advanced stage then, but could not tell how long it had existed before. He, like *Dr. Hornsby*, considered him incurable, and sent him back to his master; and yet he lived nine or ten months afterwards. On this, as well as on the occasion of the examination by *Dr. Hornsby*, it would have been much more satisfactory, if the defendants had tendered back the slave, and afforded the plaintiff the chance of saving his life, by care and medical skill.

The note was given for value received, and raises a presumption against the defendants, since they could have had an examination contradictorily with the plaintiff, and settled the difficulty before giving it. Though defendants in the case, they are plaintiffs in the redhibitory claim, and, as such, it was incumbent on them to produce, by evidence, reasonable certainty that the disease existed to such a degree as rendred the slave useless at the time of the sale. C. C.

DEMORUELLE
v.
SUGG.

2496, 2508. They have offered nothing but the opinions of physicians, formed by an inspection a length of time subsequent to the sale. We have frequently had occasion to express our opinion of the unsatisfactory character of such testimony, not from a doubt of the opinion, but from the intrinsic nature of the evidence. This case is remarkably similar as to the disease and its cause, and all the details, to that of *The Executors of Dupré* v. *Desmaret*, in which we were obliged to set aside the verdict of a jury. 5th Ann 591. See also the case, *Seaton* v. *Municipality Number Two*. 3d Ann. 44. Also, 5th Ann. 592.

Reluctant as we are to reverse a judgment on a question of fact, we are compelled to say, that the evidence in this case, clearly preponderates in favor of the plaintiff.

The judgment of the district court is reversed; and it is decreed, that the plaintiff recover from the defendants *in solido*, the sum of three hundred and ten dollars, with eight per cent interest, from the 4th day of April, 1849, until paid, and costs in both courts.