## H. STACKHOUSE *v.* R. B. KENDALL.[*]

In an action to recover the price of a slave, on the ground that he was unsound at the date of the sale, the plaintiff cannot recover where no *post mortem* examination was made, and the proof of the nature and duration of the disease rested exclusively upon the conjectural and conflicting opinion of physicians.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Hoffman* and *Ogden*, for plaintiff. *Howard*, for defendant. By the court:

ROST, J. The plaintiff seeks to recover the price of a slave, purchased by him of the defendant, on the ground that at the time of the sale the slave had the consumption, of which disease he has since died. The defendant pleaded the general issue, and cited his vendor in warranty. Two antecedent vendors were successively called in warranty, and they all joined in the defence.

The plaintiff's petition was dismissed as in case of nonsuit, and he appealed. The defendant asks that the judgment be amended so as to be final in his favor.

No *post mortem* examination of the slave was made, and the proof of the nature and duration of the disease rests exclusively upon the conjectural and

---

*This case is in the list of cases not reported by my predecessor. I have inserted it because Judge *Eustis* refers to it as authority in the case of *Hooper* v. *Owens*, p. 206. R.

conflicting opinions of physicians. According to the opinion of *Dr. Stillette,* <span>STACKHOUSE<br>*v.*<br>KENDALL.</span> the disease is not proved. On the other hand, the family physician of the plaintiff testifies, that the impression which the boy made on him, when he first saw him, was that he could not live; that his chest was uncommonly small and out of proportion with his height, and that in persons similarly constructed the lungs are not long enough to meet the secretions of blood with the body. He further states it as his opinion, that the slave died of consumption, and that the disease was the consequence of his constitutional conformation. If it be true that persons of small and narrow chests are invariably consumptive, this peculiar conformation is a visible defect, and the purchaser who buys a slave thus formed, might, perhaps, be considered as taking on himself the risk of consumption. But, be this as it may, the evidence of the existence of the disease, at the time of the sale, is such as we have repeatedly held we could not act upon. *Executors of Dupre* v. *Prescott,* 5 Ann., 592.

The physician who last saw the slave states, that the day before he died he was suffering from diarrhea and hectic fever, but that he showed no sign of approaching dissolution. It is proved that the cholera was among the plaintiff's slaves at that time, and the rapidity and manner of the death point to that disease as the cause. The evidence induces us to believe that the fever was the result of debility, which followed the diarrhea; that the diarrhea may have been, as it usually is, caused by a change of food and water on a subject lately come to Louisiana; that it was aggravated by the damp and impure atmosphere of the pork warehouse in which the slave was employed, and that it terminated in cholera.

We are of opinion that the defendant is entitled to a final judgment.

It is therefore ordered, adjudged and decreed, that the judgment in this case be amended, and that a final judgment be entered in favor of the defendant, and against the plaintiff, with costs in both courts.