(42 South. 957.)

No. 16,303.

FOX & JEWELL v. BARKSDALE & SLEDD.

(Jan. 21, 1907.)

1. ACCOUNT — ACTION ON — PETITION.

A cause of action on an open account is set forth with sufficient certainty, where the petition alleges that the defendant owed the plaintiff so much, for the price of merchandise sold on a credit to the defendant in the amounts and at the dates set out in a detailed account annexed to the petition for reference.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Account, Action on, § 8.]

2. NOVATION — WHAT CONSTITUTES.

The debt of a commercial firm is not necessarily novated by the acceptance of the joint note of the partners "to represent the purchase price" of goods sold on a credit to the firm.

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupée; Louis Bingaman Claiborne, Judge.

Action by Fox & Jewell against Barksdale & Sledd. Judgment for plaintiff for less than the amount demanded, and both parties appeal. Increased and affirmed.

Hewitt Bouanchaud, for plaintiff. Yoist & Hewés and Albin Provosty, for defendant Barksdale.

PROVOSTY, J. Plaintiff, a commercial firm dealing in mules and horses in Cincinnati, Ohio, alleges, as follows:

"That Barksdale & Sledd, a commercial partnership domiciled in the parish of Pointe Coupée, state of Louisiana, and composed of Ivy W. Barksdale and Joseph Sledd, is truly and justly indebted to your petitioner in the sum of $3,783.25, with interest at the rate of 6 per cent. per annum on $3,680 from the 21st day of December, 1904, until March 4, 1905, with interest at the rate of 6 per cent. per annum on $180 from the 19th day of April, 1905, until paid; with interest at the rate of 6 per cent. per annum on $3,394.85 from the 18th day of January, 1905, until paid; and 6 per cent. interest per annum on $208.40 from the 14th day of June, 1905, until paid—for this, to wit:

"Petitioner shows that at divers dates during the years 1904 and 1905 your petitioner sold and delivered to the said Barksdale & Sledd horses, mules, and feed stuff, at petitioners' sale stable in the city of Cincinnati, state of Ohio, as more fully appears from the itemized statement of said sales, which statement is hereto annexed for reference, showing the consideration of the said sales."

The accounts thus said to be attached to the petition are three in number, and are itemized and sworn to. The first shows purchases made on December 21, 1904, to the amount of $3,600, and two credits, one of $2,500, of date March 4, 1905, and the other of $1,000, of date April 19, 1905, leaving a balance due of $180. The second shows purchases made on January 18, 1905, to the amount of $3,394.85. The third shows purchases made at divers dates between December 18, 1904, and June 4, 1905, amounting to $988.40, and credits, at divers dates, amounting to $780, leaving a balance of $208.

After having thus declared upon an open account, plaintiff went on and alleged that on December 21, 1904, the defendant firm executed its note for $3,680 "to represent the purchase price of said mules and horses purchased on said day," said note being signed by both members of the firm; and that in like manner on January 18, 1905, said defendant firm executed its note for $3,394.-85 "to represent the purchase price of said mules, horses, and feed purchased on said date, said notes being hereto annexed for reference and certainty of allegation."

The petition goes on to allege that the defendant firm has, since the date of the last purchase, acknowledged the whole of said indebtedness and promised to pay same, and that same is due and unpaid.

The notes are in fact annexed to the petition and correspond with the description given of them, except that they read, "We promise to pay," and are signed by the partners individually, and are therefore the joint notes of the partners, and not those of the firm. That of December 21, 1904, is credited with the two payments of $2,500 and $1,000 stated above to have been made on March 4, 1905, and April 19, 1905, re-

spectively. The notes are payable in 40 days and bear interest at 6 per cent. from date.

After praying for citation, the petition prays for judgment, as follows:

"That there be judgment in favor of your petitioner condemning the said Barksdale & Sledd, and the said Ivy W. Barksdale and Joseph Sledd in solido, to pay your petitioner the said sum of $3,783.25 with interest at the rate of 6 per cent. per annum on $3,680 from the 21st day of December, 1904, until the 4th day of March, 1905; 6 per cent. per annum interest on $180 from the 19th day of April, 1905, until paid; 6 per cent. per annum interest on $3,394.85 from the 18th day of January, 1905, until paid; and 6 per cent. per annum interest on $208.40 from the 14th day of June, 1905, until paid.

"Petitioner further prays for costs, and general and equitable relief."

Defendant simply pleaded the general denial.

Plaintiff put upon the stand a member of the plaintiff firm, who testified that the purchases stated in the account were made by the defendant firm as stated, and the things purchased were delivered; that at the time the purchases were made the firm of Barksdale & Sledd was engaged in the business of purchasing and selling mules and horses; that the defendant firm had numberless times acknowledged the indebtedness, and promised to pay it; and that the defendant Barksdale in particular had repeatedly, both verbally and by letter, admitted that the debt was an indebtedness of the firm, and promised to pay it.

The witness identifies letters as having been received from the defendant Barksdale, and the letters were offered in evidence, and they show the acknowledgment of the debts testified to by the witness and the promises to pay same.

By another witness plaintiff proved that at the dates at which the purchases were made the firm of Barksdale & Sledd was engaged in the business of buying and selling mules and horses.

Neither the accounts nor the notes were offered in evidence.

The court gave plaintiff judgment for $2,500, and plaintiff and the defendant Barksdale have each taken an appeal.

In the course of the trial defendants objected to any evidence being received to support the petition, on the following grounds:

"First. That the allegations of the petition are too vague and indefinite to support any evidence.

"Second. It appearing in the petition that the indebtedness sued on was closed by notes of the defendants, it is incompetent for plaintiffs to introduce evidence to prove an indebtedness on open accounts. On the other hand, it is incompetent for plaintiffs to introduce evidence in support of any claims on the notes, for the reason that their suit is not founded on such notes, but upon the open account attached to the petition, and that, although the said notes are attached to the petition, they are not made a part thereof, but are annexed merely for certainty of averment."

The only vagueness we find in the petition is as to whether the suit is founded on the open account, or on the notes; but, since it is certainly founded upon one or the other, and is equally well founded in either case, and in either case defendant was abundantly informed of what debt was being claimed of him, and could not possibly have been surprised by any evidence offered to prove both the open account and the notes, and since the judgment in the suit would certainly be res judicata of any further demand founded on the same debt, we do not think the objection to the evidence was good. Doullut v. McManus, 37 La. Ann. 800.

The notes not having been offered in evidence, and no evidence offered in support of the allegation that they were executed, that part of the petition must be considered as not proved. But sufficient remains to support the demand as founded on the open account.

Novation was not pleaded, and the rule is that novation must be specially pleaded; but

defendant relies, nevertheless, upon novation. The contention is that the novation appears from the allegations of the petition, and that consequently it was not necessary to plead it; that the circumstances alleged in the petition clearly indicate an intention to novate the debt.

We do not discover such an intention. It is well settled that the acceptance of a note does not novate a debt standing upon open account. As was said by this court in the case of Montross v. Byrd, 6 La. Ann. 518:

"To convert a partnership debt into a separate debt of one partner, the intention so to do must clearly appear. There must be a deliberate and mutual assent of creditor and debtor to such conversion. Nay, more, a partnership creditor may take the separate liability of one partner, without necessarily thereby extinguishing the partnership liability. Courts will look in all cases to the intention, as deducible from all the circumstances. Novation is not presumed. The renunciation of substantial and valuable rights is not presumed."

We think the demand of plaintiff for the amount for which judgment is prayed, namely, $3,783.25, is fully and abundantly proved, and that the partnership was a commercial partnership. A firm engaged in the business of buying and selling personal property is a commercial partnership, under the express terms of the Civil Code. But, the notes not having been offered in evidence, there is no proof of an agreement to pay conventional interest, and hence only legal interest can be recovered.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be increased to $3,783.25, with 5 per cent. per annum interest on $180 thereof from April 19, 1905, and like interest on $3,394.85 thereof from January 18, 1905, and like interest on the balance thereof from June 14, 1905; and that as thus amended said judgment be affirmed—defendants to pay all costs.