PROVOSTY, J.
Two of the cars of the defendant railway on one of which plaintiff was a passenger had a head-on collision. The platforms of the two cars were more or less smashed and demolished. Plaintiff occupied a seat on the left side of the car, next to the aisle. He was thrown forward against the back of the seat in front of him^ receiving a severe blow in the region of the heart. Por a moment he was unconscious; and, after regaining consciousness, was, for a while, unable to speak. With assistance, he got into another car, and went direct to a physician, who found that:
“He was suffering pain in the chest. It was severely painful over the lower part of the chest, and he was in a condition of great shock and prostration, with pain: and there- was tremultuous heart action, and very rapid pulse. The heart was beating very fast. I ordered a heart stimulant, digitalis and strychnine, and *228 also a salve, known as Grady’s Ungüentan, to be rubbed on him.”
A month later plaintiff was examined by the same physician, who describes his condition then as follows:
“I found that there was some dilatation, but not very much at that time, especially in the lower half of the heart, and considerable leaks into the heart; the mitral valve, for instance. Besides. that, Mr. Dougherty was in an extremely nervous state. He had a twitching in the muscles of the left side of the back, and down the left thigh. I felt that that was due to some injury to the nervous centers in the spinal cord.”
Prom the time of the accident, plaintiff was practically incapacitated from work; although, from necessity, he did do some work, notwithstanding his not being in a .condition of health to do it. At the time of ■ the trial, two years later, plaintiff was a complete wreck; in an extremely nervous condition, nearly all the valves of the heart leaking, and that organ “immensely dilated”; totally and permanently incapacitated from doing any manual work whatever.
A few weeks before the accident, the same physician had examined plaintiff with a view to life insurance and passed him. His organs were sound.
At the time of the accident, plaintiff was 52 years old, and, apparently, in good health. He was a screwman by occupation, and was foreman of his gang. When not plying that vocation, he worked, as we understand, as a day laborer. His earnings as screwman were from $900 to $1,000 a year. His wages were $6 a day, and he worked, on an average, three days in the week.
There can be no question of defendant’s negligence, nor of plaintiff’s being reduced to a physical wreck. The only question must be as to whether the accident was the cause. The same physician already quoted, when asked what plaintiff’s present condition was due to, answered:
“Well, from the fact that I found his -heart to be in a sound condition just previous to this accident,-just a few weeks before the accident happened, and that this condition began to develop shortly after the accident, at least within a month, I cannot really consider it to be due to anything else but the accident, or in the injury that he received; that is the only thing I can attribute his trouble to.”
There can be no serious doubt, in our opinion, that that is the sensible view to take of the matter.
Another physician, who examined plaintiff in November, 1908, found his condition pretty much as it is now, and says that “a very hard blow” could have brought on that condition.
Two other physicians examined plaintiff a day or so after the accident, and testify that they found nothing to be the matter then with his heart; and that, while injury to a normal heart from a blow is possible, yet it is so unlikely that, in their opinion, plaintiff’s heart trouble must be attributed to something else; probably to the great physical exertion and straining he has had to go through for a number of years as a screw-man.
The learned counsel for defendant adduce this testimony, and argue that the causal connection between the accident and plaintiff’s present physical condition is not established.
We recognize that it is possible that the blow may have done no more than accentuate an already diseased condition of plaintiff’s heart; but it has certainly done at least that much; and, from all the circumstances, we must conclude with tne jury that it has been the whole cause of the trouble.
The jury allowed $5,000. Plaintiff has prayed for an increase, and we think some increase should be allowed. Prom a healthy, able-bodied man, of considerable earning capacity, with a fair promise of a goodly part of his allotted span of life yet before him, plaintiff has been converted into a physical wreck, to whom any greater exertion than moving “out of a rocking chair to a lounge” *230 may prove instantly fatal, and destined to spend his remaining days in continual pain more or less acute.
It is therefore ordered, adjudged, and decreed that the judgment appealed from he increased to $7,500, and that, as thus amended, it be affirmed. Defendant to jpay all costs.