ARNDT ET AL. v. D. H. HOLMES CO., LTD.

(August 13, 1928. Opinion and Decree.)
(September 4, 1928. Rehearing Refused.)

A. M. Guilbeau, M. P. Lacompte, of New Orleans, attorneys for plaintiff, appellee.

McCloskey and Benedict, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a damage suit for the sale of unsound food.

The plaintiff, Charles Arndt, alleged that on September 18, 1925, his wife bought of defendants a cake, commonly called "Boston cream cake," and brought the same to the residence of plaintiffs who ate of the same; that the defendants are engaged in the business of manufacturing and selling cakes and pastries of all kinds; that the Boston cream cake purchased by Mrs. Arndt from the defendant was unfit for human consumption; that it contained ptomaine poison, and that every member of her family who partook of said cake, became ill, especially plaintiffs' two minor children, Odessa and Bernadette; that they were stricken with ptomaine poisoning; that they were confined to their beds and put under the care of physicians; that the poison in their system infected their appendix as well as their heart; and that they were both taken to a hospital where they were operated for appendicitis; that both children are still confined to their beds and are now treated for heart disease; that the two girls are aged respectively, 12 and 18, "that prior to the eating of the said cake and the poisoning and resultant illness, neither of these children had suffered from appendicitis or heart disease;" that from the ptomaine poison and from the operation for appendicitis and from their affected hearts they have suffered and will suffer during all their lives great pain and privations of the pleasures of their age; the plaintiffs claim for the use of their two minor daughters as follows:

For physical and mental pain endured in the past by each daughter $5000 or both................$10,000.00
For physical and mental pain to be endured in the future through life $10,000.00, or both .............. ....... 20,000.00

Making a total of .... .... _ ...$30,000.00

The defendants denied every allegation of plaintiffs' petition.

Further answering they admitted that they were engaged in the manufacture and sale of cakes as well as of the cake commonly known as "Boston Cream Cake" that it happened that on September 18, 1925, they sold a number of said cakes and that a number of customers were taken ill with nausea and vomiting; but they denied that, as manufactured, said cakes were unfit for human consumption; that said cakes were made from flour, sugars and milk purchased from the most reputable dealers in this city and manufactured by employees of the highest skill; that no such accident had happened before; that the condition of the cakes was caused by the abnormally protracted hot weather and was unknown to defendants; they admit that for all such damages as might have been foreseen they are liable under the case of Doyle vs. Fuerst and Kramer, 129 La. 838, 56 So. 906, 40 L. R. A. (N. S.) 480, Ann. Cas. 1913B, 1100. They further averred that the cakes did not bring on the appendicitis but that the two minor children were suffering from chronic appendicitis and that it was an error to have removed their appendix. They further denied that the children were suffering from heart disease or that it was caused by eating the cream cakes. They specially averred that they could be held liable only for such damages as were consequent upon nausea, vomiting, or purging, but in no event for appendicitis or heart trouble which were not caused by eating the cakes.

On May 2, 1927, Odessa Arndt had reached majority and made herself a party to the suit and adopted the action of her parents.

The jury by a vote of 9 to 3 returned a verdict of $10,000.00 in favor of the "plaintiff."

The verdict was made the judgment of the court in accordance with the petition.

After an ineffectual application for a new trial the defendants appealed.

As admitted by the defendants they are liable for all the legitimate and natural consequences of eating the cream cakes presumably unfit for human food, as established by the Supreme Court in Doyle vs. Fuerst and Kramer, 129 La. 838, 56 So. 906, 40 L. R. A. (N. S.) 480, Ann. Cas. 1913B, 1100, affirming the opinion rendered by this court in the same case in 8 Orl. App. 408, also Farrel vs. Manhattan Market Co., 198 Mass. 271, 84 N. E. 481, 15 L. R. A. (N. S.) 884, 126 Am. St. Rep. 436, 15 Ann. Cas. 1076.

In that case this court said:

"Their liability is restricted to such damages as were contemplated or may reasonably be supposed to have been contemplated by the parties at the time the contract was entered into. C. C. 1934-2516; Allen, Bush & West vs. (Steers) Stiers, 39 La. Ann. 586, 2 So. 199. Among these must certainly be included the damages resulting directly as the natural and logical result of eating poisoned food."

In the Doyle case, after an examination of the civil and of the common law as to the liability of a vendor of articles of food and the extent thereof, covering five pages, the court said:

"The measure of damages sustained by a purchaser of food, who is made ill through its unwholesomeness, is not merely reimbursement of the price, but all damages that were foreseen or could have easily been foreseen as likely to have resulted."

And the court allowed $100, affirming the judgment of the Court of Appeal.

There is no difference of opinion about the facts; the plaintiffs and the defendants differ only as to the consequences of those facts.

The established facts are that Mrs. Arndt bought some "Boston Cream Cakes" at the defendants' place of business, carried them home, where she, her husband, and their two daughters, one 13 and the other 20, ate them; that a few hours after, they were all taken ill, all with the symptoms of ptomaine poisoning; Mr. and Mrs. Arndt were but slightly ill, but their two daughters, Bernadette and Odessa, were violently ill; that on the day after they had eaten the cakes they called in Dr. Peter B. Salatich of whom the defendants say:

"We will admit you have a very enviable reputation in this community as a surgeon, very enviable; I have understood for many years that you are one of the best surgeons in the city, but not necessarily a physician, that your specialty was that of a surgeon."

This doctor found the two girls vomiting, and purging, and suffering much pain; especially from their abdominal right side. After he had exhausted the ordinary methods of relief with ice bags and others, his patients still suffered, and complained in addition of pains in their heart; he then came to the conclusion that one of the girls was affected with appendicitis; he brought her to the hospital for an operation; he could not use a general anaesthetic because "her heart was too bad," and he resorted to a local; a week afterwards, he observed the same symptoms of appendicitis and heart trouble upon the other sister and he removed her appendix, also by the same means; the two girls were then taken to their homes where they continued to suffer of their heart and to be treated by Dr. Salatich.

They were confined to their bed for eight or nine months; one of them missed her school during that time; and the other had to put off her engagement to marry; on the day of trial, eighteen months after, the two girls were still suffering from their hearts, and were under treatment by Dr. Salatich. Prior to their eating of the cakes their general health was good; they were never sick; this was testified by their parents, by their family physician,

by playmates and by themselves; they testified that prior to the accident they played ball, golf, tennis, that they walked and danced but that since the accident they had not been able to indulge in those sports. Six of their friends corroborated them in those statements.

But the defendants plead that there was no necessity for removing the appendix and that it was error to have done so, and that they cannot be held liable for the operation nor for the consequences thereof. The doctors, however, testify that the surgeon is the only judge of that necessity.

Dr. Lewis H. Levy, for the defendants, testified as follows.

"Q. In other words, you wouldn't let a laboratory report tell you what to do?
"A. No, sir.
"Q. Now, Doctor, suppose in that same case, that you went ahead and operated, could you say that you had made an error of the most serious medical nature?
"A. Well, I wouldn't say the most serious medical nature. I would say that I made an error in judgment. I would say, if the case was to save the life of the human being, that I operated, and, when I found the report showed a chronic appendicitis, and it would show chronic when I looked at it myself when I opened the abdomen up, I would see it was chronic and not acute or sub-acute, I would say, as we frequently do at the operating table: 'Well, this case was not as severe or bad as I had expected, and it probably would have been just as well or better if I had waited longer to operate or waited indefinitely to operate.' We frequently do that.
"Q. But you would have gone ahead with your operation?
"A. Yes, sir, we never allow a laboratory to influence us since we have made up our opinion."

The defendants deny that the eating of the cakes could have provoked appendicitis or heart trouble.

Upon that subject Dr. Foster M. Jones testified as follows:

"Q. Doctor, you stated that a violent attack of ptomaine could bring on an acute appendicitis?
"A. I believe that is a matter of record.
"Q. Do you believe that?
"A. I have never seen a case, but it is a matter of record."

Eight doctors testified in the case, four on each side. They each indulged at length in an erudite exposition of the medical conditions and possibilities of this case.

In their explanation they soared too high in the use of technical words and phrases for the judicial mind to contemplate.

Their efforts consisted, upon one side, to prove that ptomaine poison could not be the cause either of appendicitis or of heart trouble. Some doctors were of the opinion that it could not, others swore it could.

We are inclined to the latter belief, because one doctor said it was as to appendicitis of record, while the others only declared that they knew of no case; Moore vs. Lambeth, 5 La. Ann. 72-73. Inasmuch as poison affects the heart, sometimes to the extent of arresting its palpitations, and as ptomaine is a poison, it is reasonable to believe that it may affect the heart. But we must decide rather from facts than from opinions or theories.

The facts are that both girls suffered from appendicitis and heart trouble, and no other cause can be attributed to them except the poisoned cakes. Dougherty vs. N. O. Ry. & Lt. Co., 127 La. 225, 53 So. 532. Not one of the doctors, with the exception of Dr. Salatich, whose superior talent and experience are admitted, ever examined the two girls. They were tendered in open court to the expert doctors of the defendants for examination, but the tender was not taken advantage of.

In the case of McCubbin vs. Hastings, 27 La. Ann. 718, the Supreme Court said:

. "When scientific gentlemen undertake to tell us under such a state of facts that the enema as administered, was a benefit to the patient instead of an injury, that a substance as powerful as alcohol in which camphor, a violent stimulant, has been dissolved, can be injected into one of the tenderest parts of the human frame, when the patient is suffering from a severe attack of such a disease as the yellow fever is, without doing any harm, but, on the contrary, doing good, we see in our mind's eye the unfortunate victims upon whom the experiment has been tried as she is described by the witnesses, writhing in agony, dying, dead; and we say that dreadful fact alone destroys all their theories; and we think that he who, by himself or those for whose acts he is responsible, caused the agony not to say death, should be made to answer for the suffering which he caused."

The conjectural and conflicting opinions of physicans who never saw the patient are not sufficent to establish a case. Roy vs. Roy, 5 La. Ann. 591; Suc. of Dejean, 5 La. Ann. 593; Suc. of Bozant, 5 La. Ann. 709; Sargent vs. Slatter, 6 La. Ann. 72; Montross, etc., vs. Byrd, 6 La. Ann. 518; Demoruelle vs. Sugg, 7 La. Ann. 42; Leonard vs. Kleinpeter, 7 La. Ann. 44; Stackhouse vs. Kendall, 7 La. Ann. 670; Williams vs. Talbot, 12 La. Ann. 408; Alford vs. Hughes & Randolph, 14 La. Ann. 727; Gouse vs. Bullard, 16 La. Ann. 107; 1 Orl. App. 9; 13 Orl. App. 165.

But if the appendicitis and the organic heart trouble, endocarditis, call it by what name you please were not produced by the sour cakes, what was it that caused them? No one has intimated to us another cause and Dr. Salatich tells us he came to that conclusion by "exclusion" of all other causes.

The defendants answer that the hospital report states that Bernadette was already suffering from "chronic exudative and proliferative appendicitis" and from a base faint blow from the heart.

Dr. Salatich testified that "their hearts were rather bad. They both had murmurs, very loud murmurs."

The evidence is that one may be afflicted with the "chronic appendicitis" for years and not know it, without the need of an operation. The same may be said of the blow of the heart, until some accident arouses the dormant infirmities which then demand attention. We must conclude that those two girls were afflicted with chronic appendicitis and heart trouble; that those diseases were dormant and were superinduced by the Boston cream cakes, in a state of decomposition. There is no other theory and we can arrive at no other practical conclusion. When that condition exists, the defendants who wake up the dormant diseased organ are liable in damages. Plaintiffs are entitled to be compensated only for so much of their affliction as was the result of the accident. Taylor vs. Penny, 5 La. Ann. 7; Heirs of Duverge vs. Salter, 5 La. Ann. 94; Behan vs. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862; Caldwell vs. City of Shreveport, 150 La. 469, 90 So. 763; Haddad vs. Commercial Motor Truck, 150 La. 327, 90 So. 666; Graft vs. Gulf Lbr. Co., 151 La. 281, 91 So. 736; Hicks vs. Meridian Lbr. Co., 152 La. 975, 94 So. 903; Donohoe vs. Scharfenstein & Son, 154 La. 815, 98 So. 256; Durrett vs. Woods, 155 La. 540, 99 So. 430.

Therefore we think that the amount allowed by the jury is excessive.

There must be some uniformity in the amount of damages allowed. Joynes vs. Troye, No. 11,268, 119 So. —, this day decided.

In the case just quoted, Caldwell vs. City of Shreveport, 150 La. 469, 90 So.

763, the traumatic injury inflicted upon the plaintiff superinduced locomotor ataxia which is incurable, progressive, permanent, while the two injuries produced in this case were, as to one, removed by the operations, and as to the other, cured by the recuperative powers of youth, nature, and medicine. As we have just said, the plaintiffs can recover only such damages as were the result of the accident, and reasonably contemplated.

In that case judgment rendered by the trial court in favor of plaintiff for $3,000 was reduced by the Supreme Court to $2,000.

It is therefore ordered that the judgment herein be amended by reducing it from ten thousand dollars to four thousand dollars, and as thus amended that it be affirmed, the defendants to pay the costs of appeal.