**ARNAUD'S RESTAURANT, Inc., et al.**

v.

**COTTER.**

**No. 14658.**

United States Court of Appeals,
Fifth Circuit.

May 20, 1954.

Rehearing Denied Aug. 16, 1954.

**884**

Henry Jacobs, Harry Nowalsky, A. Miles Coe, Richard B. Montgomery, Jr., and Cicero C. Sessions, New Orleans, _a., for appellants.

A. J. Waechter, Jr., and Michael J. Molony, Jr., New Orleans, La. (Jones, Walker & Waechter, New Orleans, La., of counsel), for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

The amended complaint alleged in substance that the plaintiff went to Arnaud's Restaurant in New Orleans, Louisiana, and was there served an order of pompano en papilotte which, by reason of the negligence of the latter, contained a large, solid piece of crab shell which was a substance foreign to that dish; also that Arnaud's represented to the public that the food served was fit and proper for human consumption; that the plaintiff swallowed the piece of crab shell with results, detailed in the complaint, which caused him damages and injuries and ex-

pense. The answer of the defendants, Arnaud's Restaurant, Inc., and its insurer, London Guarantee and Accident Company, Ltd., raised the general issue and in the alternative alleged that the plaintiff was guilty of contributory negligence. The evidence adduced at the trial, insofar as it is pertinent here, is related below.

On January 5, 1951, plaintiff, his wife and two friends, arrived in New Orleans, Louisiana, to spend the weekend. That evening at about 8 o'clock they went to Arnaud's Restaurant for their evening meal. Each of them ordered and was served a fish dish known as pompano en papilotte which they consumed on the premises. Shortly after leaving the restaurant plaintiff complained of a "bad case of indigestion". He and Mrs. Cotter returned to their hotel room at about ten o'clock and plaintiff, seeking relief from what he described as a "marvelous case of indigestion", took some magnesia tablets. The next morning, after a restless sleep, he was suffering from pains in his chest, gagging and belching. During the day he took tums and pepsin to relieve his pain. Later he gave himself an enema and took a dose of sal hepatica, but was still not relieved of his discomfort. That evening a doctor was called and on his orders plaintiff was removed to the hospital.

Plaintiff's ailment was at first diagnosed as coronary thrombosis and he was administered treatment accordingly. However, further examination disclosed that he was suffering from a perforation of the esophagus. After he had been hospitalized for several days, plaintiff complained of severe rectal pains. Upon examination by the attending physician it was discovered that a very hard object was lying horizontally across his upper rectum. The object, a piece of sharp crab shell approximately two to three centimeters in size, was dislodged and removed from the rectum. The medical and surgical treatment which followed [1]

---

1. A fair statement of this treatment and its results is contained in the plaintiff's brief as follows:

"Because the administration of antibiotics and conservative care was unsuccessful as a method of treatment, Dr.

extended over a period of several months at an expense of approximately $13,800.

There was testimony to the effect that the injury to plaintiff's esophagus could have been, and very likely was, caused by the ingestion of the crab shell. It was the opinion of his medical experts that the perforation was caused by a trauma and could not have been caused by disease. Symptoms occasioned by a traumatic perforation of the esophagus occur immediately. Since the plaintiff had not eaten anything between the time he ate a vegetable plate for lunch and his visit to Arnaud's, it was the theory of his case that he must have ingested the crab shell during his evening meal, otherwise the symptoms of which he complained would necessarily have occurred earlier.

The defendants, in support of their defense that it was impossible for there to have been any crab shell in the pompano en papilotte, as contended by plaintiff, offered evidence to show how the food was prepared and the precautions which were generally taken to prevent such an accident. According to this evidence no crab meat is used in preparing pompano as it is served at Arnaud's and all reasonable precautions are taken to prevent foreign matter from finding its way into the prepared dish.

Howard Mahorner performed a mediastinotomy, which is an operation to explore the mediastinum, inserting drains from the exterior of the body into the chest cavity, also inserting a feeding tube into the stomach for feeding purposes. Appellee apparently had a rather uneventful recovery and in a couple of weeks returned to his home in Jackson, Mississippi. While appellee was convalescing at his home in Jackson, Mississippi, he had a recurrence of the symptoms for which he had been operated on in New Orleans. Appellee's family physician, Dr. Harvey Johnston, after telephonic consultation with the New Orleans physicians, performed a second mediastinotomy on February 17th. After the operation, appellee was in such critical condition as a result of a lung collapse, that he was required to undergo another operation involving the installation of tubes into his chest. Thereafter, and until July of 1951, the opening made into the mediastinum from the exterior of

The case was submitted to the jury on special issues. It rendered a verdict finding that the crab shell came from the pompano en papilotte, that it was the cause of the injury suffered by plaintiff, that plaintiff was not negligent in failing to detect the presence of the crab shell before he swallowed it and that his damages were $55,500. The trial court overruled the defendants' motion for a judgment *non obstante veredicto*, ordered that a remittitur in the amount of $10,000 be filed and, after the filing of the remittitur, entered judgment for the plaintiff in the amount of $45,500.

For the purpose of this appeal the defendants apparently concede that the evidence is sufficient to sustain the findings of the jury that plaintiff ingested the crab shell at Arnaud's and that it caused his injury. In our view there was ample evidence before the jury to justify these findings. It is contended, however, that the court erred in trying the case on the theory of implied warranty and in holding that plaintiff was not required to prove that Arnaud's was guilty of negligence, either actually or by the application of the doctrine of *res ipsa loquitur*. It is further contended that the verdict was so excessive as to show that the jury was prejudiced. The defendants allude

the plaintiff's back was kept open for drainage purposes by forceful insertion of the physician's fingers as deep as the fingers would reach three times each week. Because appellee did not respond, after consultation with Boston specialists, a fourth operation was performed and the lower one-fourth of the esophagus was removed. Appellee's spleen was removed and the stomach moved into the chest cavity in order to be connected with the lower end of the remaining esophagus. By October 15, 1951, appellee had sufficiently recovered so that he was able to resume some of his usual activities. By the time of the trial he was able to carry on most normal activities that did not involve physical exertion. However, for the rest of his life Mr. Cotter will be required to live on a restricted diet and will suffer from indigestion, gas pains and regurgitation of his food to such an extent that his sleep at night is continually interrupted."

to the plaintiff's failure to discover the crab shell before he swallowed it and urge that this constituted contributory negligence as a matter of law.

■ The primary question for determination is whether under the decisional law of Louisiana the proprietor of a public eating place who serves a food fabricated by him and containing a foreign substance to a paying guest for immediate consumption on the premises is under an absolute liability for damages proximately resulting from the impurity, under the theory of an implied warranty of fitness. Our review of the authorities [2] convinces us that such is the law of Louisiana. Consequently, the trial court correctly enforced and applied this principle in the trial of the present case.

This rule of liability was first announced in Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 907, 40 L.R.A., N.S., 480, where the Supreme Court of Louisiana held that the seller of food at a public eating place is conclusively presumed to know any unwholesome condition of the food and is answerable in damages to a purchaser who is made ill because of the unwholesomeness. The basis of this holding was said to be that:

" * * * every one ought to know the qualities, good or bad, of the things which he fabricates in the exercise of the art, craft, or business of which he makes public profession, and that lack of such knowledge is imputed to him as a fault, which

makes him liable to the purchasers of his fabrications for the damage resulting from the vices or defects thereof which he did not make known to them and which they were ignorant of."

The defendants' reliance upon the concurring opinion of Justice LeBlanc and the dissenting opinion of Justice Hawthorne in LeBlanc v. Louisiana Coca Cola Bottling Co., supra, is misplaced. It is the majority opinion in that case to which we look for guidance. While the Court was there dealing with a maufacturer's liability for injuries caused by the consumption of deleterious ingredients contained in a bottled beverage, it carefully pointed out that under Louisiana jurisprudence a plaintiff in such a case is entitled to rely upon the manufacturer's implied warranty that its product is safe for human consumption.[3]

■ The principle, contended for by the defendants, that a customer who eats meat dishes ought to anticipate the presence of bones which are natural to the type meat served and cannot hold the restaurant keeper liable for an injury occurring as a result of the presence of such bones, is supported by a number of authorities,[4] but it is not applicable to the facts of this case. Those cases are based upon the proposition that a bone natural to the meat which is served is not a foreign substance to that particular dish. Since the defendants admit, and the evidence shows, that Arnaud's

2. Doyle v. Fuerst & Kraemer, 56 So. 906; MacLehan v. Loft Candy Stores, Inc., La. App., 172 So. 367; Kelly v. Ouachita Dairy Dealers Coop. Ass'n, La.App., 175 So. 499; Ogden v. Rosedale Inn, La. App., 189 So. 162; LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873. See also Arndt v. D. H. Holmes Co., 9 La.App. 36, 119 So. 91.

3. It was noted in that case that there is a divergence of opinion among the State courts as to whether in such cases a manufacturer's liability is predicated upon negligence or an implied warranty. There is likewise an irreconcilable conflict of

authority as to whether there is an implied warranty of fitness and quality where food is prepared and served to a customer to be consumed on the premises, see 22 Am.Jur. 878, Food, Secs. 94, et seq. However, the cases cited in footnote 2, supra, leave no doubt that under Louisiana jurisprudence the keeper of an eating place does make such a warranty.

4. See Mix v. Ingersole Candy Co., 6 Cal. 2d 674, 59 P.2d 144; Goodwin v. Country Club of Peoria, 323 Ill.App. 1, 54 N.E.2d 612; Silva v. F. W. Woolworth Co., 28 Cal.App.2d 649, 83 P.2d 76.

does not use crab meat in the preparation of pompano en papilotte, we agree with the plaintiff that the piece of crab shell contained in the dish served to him was a foreign substance. It will not do to categorize all sea foods usually served in restaurants as a common dish.

■ No affirmative evidence was offered by the defendants to sustain their defense of contributory negligence, and thus the only evidence contained in the record upon which the jury could have found that the plaintiff was negligent was the fact that he failed to detect the presence of the crab shell before he swallowed it. We are unwilling to hold that his failure to discover the crab shell contained in the pompano en papilotte, served as it was and containing a number of ingredients, established contributory negligence as a matter of law. The circumstances presented an issue of fact for determination by the jury under proper instructions by the court, as were given in this case.

■■ The verdict returned by the jury cannot be said to be legally excessive. The granting or denial of a new trial because of the amount of damages awarded by the verdict of the jury rests within the sound discretion of the trial court. The trial court exercised its discretion and ordered a remittitur in the amount of $10,000 and upon the entering of the remittitur affirmed the modified verdict and entered judgment accordingly. Under the facts disclosed by the record we are unable to say that the court abused its discretion. Excessiveness or inadequacy in fact of a jury verdict presents nothing for our review,[5] and we find nothing in the record to sustain the contention that the verdict was so excessive as to show that it was the result of prejudice or otherwise improperly motivated.

No reversible error appearing, the judgment is

Affirmed.

---

5. Capella v. Zurich General Accident Liability Ins. Co., 5 Cir., 194 F.2d 558.