MERRIMAC CHEMICAL COMPANY *vs.* AMERICAN TOOL AND MACHINE COMPANY.

AMERICAN TOOL AND MACHINE COMPANY *vs.* MERRIMAC CHEMICAL COMPANY.

Suffolk. November 16, 1905. — June 18, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Sale,* Warranty.    *Contract.    Negligence.*

In an action, by a corporation manufacturing chemicals against a corporation man-ufacturing tools and machinery, for money paid by the plaintiff to the widow and administratrix of one of its employees who was killed by the explosion of the revolving basket of a centrifugal drier which was sold to the plaintiff by the defendant, caused by the excessive speed of the revolutions alleged to have been due to the fact that the machine was fitted with a driving pulley fifteen inches in diameter instead of one that was twenty-four inches in diameter, it appeared, that the machine was ordered by the plaintiff's superintendent and, there being a delay in the delivery, the superintendent called up the defendant on the telephone and asked the person answering to send him a blue print of the machine, which he did, that the size of the driving pulley was given on the blue print as twenty-four inches in diameter, and the speed of the basket was marked at thirteen hun-dred and twenty revolutions per minute, that the plaintiff's superintendent turned

over the blue print to the mill architect, who two months after the machine was delivered did the work of calculating the size of the pulleys and the revolutions of the different shafts and planned the shafting for a pulley twenty-four inches in diameter, that the defendant, which had no notice of the use which was to be made of the blue print, sent the machine with a driving pulley fifteen inches instead of twenty-four inches in diameter, the effect of which was that with the shafts and pulleys as planned by the mill architect the revolutions of the basket would be increased from thirteen hundred and twenty per minute to two thousand or twenty-two hundred per minute, that the work of setting up the machine was done by an outside person employed by the plaintiff to do the work under the general supervision of the plaintiff's chief engineer, that both the chief engineer and the person employed to do the work noticed when the machine was set up that the size of the driving pulley was not the same as shown on the blue print, and the chief engineer knew that the pulley would make the machine go much faster than a twenty-four inch pulley, that these machines were manufactured and sold by the defendant in the general market to be set up and connected in the factory by the purchaser, that a driving pulley of some sort usually was sent with each machine, and the defendant furnished a pulley according to the speed of the main shaft if that was given, but that in this case no particular size of driving pulley was asked for and the defendant knew nothing about the speed of the plaintiff's engine or shaft, that the defendant's manager did not know until after the accident that the blue print had been sent, that a bill of the machine and the articles sent with it was sent by the defendant to the plaintiff about the time that the machine was sent, and that in this bill the pulley was described as a fifteen inch pulley. *Held,* that even if the blue print constituted an implied representation or warranty of the size of the pulley, which was doubted, there was no evidence warranting a finding that the plaintiff was justified in relying on the representation or was free from negligence in doing so, knowing that the size of the pulley furnished was smaller than that represented on the blue print and that the result would be to make the machine go much faster, and that a verdict properly was ordered for the defendant.

Two ACTIONS, the first an action of contract or tort brought by the Merrimac Chemical Company on behalf of the Employers' Liability Assurance Corporation, to recover the sum of $891 paid by the latter corporation in settling the claim of Ellen Murphy, the widow and administratrix of one Daniel Murphy, who received injuries from the explosion of a centrifugal hydro-extractor or drier while in the employ of the Merrimac Chemical Company, causing his death after conscious suffering; and the second an action of contract brought by the American Tool and Machine Company to recover for labor and materials furnished by the plaintiff in repairing the hydro-extractor after the explosion. Writs dated October 14 and November, 1901.

In the Superior Court the cases were tried together before *Aiken*, C. J. The substance of the evidence is stated in the

opinion. At the close of the evidence the Chief Justice ruled in the first case that upon all· the evidence the plaintiff could not recover and ordered a verdict for the defendant; and in the second case, no defence being set up except the evidence offered in support of the first case, ordered a verdict for the plaintiff for the amount named in the declaration. The Merrimac Chemical Company, being the plaintiff in the first case and the defendant in the second case, alleged exceptions.

*J. Lowell & J. A. Lowell,* for the Merrimac Chemical Company.

*W. F. Garcelon,* for the American Tool and Machine Company.

MORTON, J. These two actions were tried together. The judge ruled in favor of the defendant in the first, and for the plaintiff in the second. The second is defended on the same grounds in substance on which the first is brought, and it follows that if the ruling for the defendant in the first action was right, then that in the second was also. The first is an action to recover the amount paid by the plaintiff after notice to the defendant to settle a claim made upon it by the administratrix of one Murphy who died in consequence of injuries received from the bursting of a revolving basket,* so-called, while at work on a machine in the defendant's employ. The machine was furnished to the Chemical Company, which we shall speak of as the plaintiff, by the Tool and Machine Company which we shall call the defendant. It was ordered by the plaintiff's superintendent. There was delay in the delivery, and the superintendent " after waiting quite a long time " called up the defendant on the telephone and asked them to send him a blue print of the machine which they did. The size of the driving pulley was given on the blue print as twenty-four inches in diameter. The number of revolutions of the counter shaft on which the driving pulley is mounted was given at " 275 R. P. M. " meaning two hundred and seventy-five revolutions per minute. The speed of the basket is marked as "1320 R. P. M. " meaning one thousand three hun-

---

* The superintendent of the Merrimac Chemical Company in testifying defined the appliance as follows : " The basket of a centrifugal drier is a perforated pot arrangement on a vertical shaft, and the centrifugal force forces out the moisture through the perforations."

dred and twenty revolutions per minute. The blue print was turned over by the superintendent to the mill architect, who "did the work of calculating the size of the pulleys and the revolutions of the different shafts" "to use in laying out his shafting plan," and he planned the shafting for a pulley twenty-four inches in diameter. The defendant did not know the use which was to be made or was made of the blue print. The machine when sent instead of having a driving pulley twenty-four inches in diameter had one of fifteen, the effect of which was, with the shafts and pulleys as planned by the mill architect, to increase the revolutions of the basket from one thousand three hundred and twenty per minute to two thousand, or two thousand two hundred. The actual work of setting up the machine was done for the plaintiff by another concern, J. T. Freeman and Company, and one Godfrey was employed by them to do the work. The plaintiff's chief engineer had a general supervision over the work. There was testimony, which was uncontradicted as to the chief engineer, that both he and Godfrey noticed when the machine was set up that the size of the driving pulley was not the same as shown on the blue print, and the chief engineer testified "that he knew it would make the machine go much faster than a twenty-four inch pulley," as it is obvious that it would with the same shafting and pulleys. There was uncontradicted testimony on the part of the defendant from its manager that the machines were manufactured and sold in the general market to be set up and connected in the factory by the purchaser; that no particular size of driving pulley formed a part of the machines but a driving pulley of some size was usually sent with each machine; that they furnished a pulley according to the speed of the main shaft if that was given them; that in this case no particular size of driving pulley was asked for and the defendant knew nothing about the speed of the plaintiff's engine, or shaft, or of the pulley on the shaft to which the machine was to be belted and had nothing to do with setting it up. He further testified that the blue print was from their office and must have been furnished to some one from their office; that they furnished blue prints to any one inquiring about the machines and that he didn't know of the blue prints being furnished to the plaintiff till after the accident. It appeared

and was uncontradicted that a bill of the machine and the articles shipped with it was sent by the defendant to the plaintiff about the time that the machine was sent, which was apparently some time after the plaintiff had received the blue print, and that the pulley was described in this bill as a fifteen inch pulley. It also appeared, and likewise was uncontradicted, that the machine was in the plaintiff's possession and had been for upwards of two months at the time that the mill architect began to plan the shafting and pulleys in connection with it.

The plaintiff does not contend that anything was said about the size of the driving pulley when the order was originally given. It contends that the blue print amounted to an implied representation or warranty that the machine would have a driving pulley twenty-four inches in diameter, on which the mill architect was justified in relying in planning the connecting shafts and pulleys, and that the defendant is liable for any injuries that resulted in consequence of the pulley being fifteen inches in diameter instead of twenty-four.

We greatly doubt whether the blue print constituted an implied representation or warranty of the size of the pulley. There is nothing to show that the defendant knew for what purpose the blue print was wanted, or that it did anything more than send it as requested. But, assuming that the pictorial representation of a driving pulley twenty-four inches in diameter contained in the blue print constituted under the circumstances an implied undertaking on the part of the defendant that the driving pulley would be of that size, it does not follow that the defendant is liable. In order to render the defendant liable the plaintiff not only must have relied upon the representation but the circumstances must have been such as to warrant it in so doing and to exonerate it from negligence on its part. We do not think that the evidence warranted a finding that the plaintiff was justified in relying on the representation or was free from negligence in so doing. The machine was put together and set up in the plaintiff's works by its servants and employees. There was uncontradicted evidence that they knew that the size of the pulley was not as represented on the blue print but was smaller and that the result would be to make the machine go much faster. There was also uncontradicted evidence that the bill of

the machine showed that the pulley was a fifteen inch pulley and that the machine had been in the possession of the plaintiff upwards of two months before the plaintiff's architect began to plan the shafting and pulleys required to convey power to it. It also appeared as already observed that the speed of the basket as well as of the pulley was marked on the blue print and that the speed of the machine depended on the various pulleys between it and the engine.

Under such circumstances we think that the plaintiff was not justified in relying on the representation, assuming that there was one, and that there was negligence on its part in putting in shafting and pulleys that would drive the basket at a faster rate than that designated. The case of *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, relied on by the plaintiff, differs materially from this. In that case the machine was sold to stand a working pressure of one hundred pounds to the square inch which it did not do in consequence of a defect in the construction which should have been discovered and remedied by the manufacturer. The plaintiff did not know, and had no reason to know as between it and the defendant, that the machine would not stand the pressure which it was warranted to stand and the court held that it was justified in relying on the representations of the defendant. The result is that the exceptions must be overruled in both cases.

*So ordered.*