[Civ. No. 19671. First Dist., Div. Three. Nov. 15, 1962.]

MARY LOUISE KASSOUF, Plaintiff and Respondent v. LEE BROS., INC. et al., Defendants and Appellants.

Sedgwick, Detert, Moran & Arnold, John S. Howell, George E. Sayre, William J. Hayes, Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Defendants and Appellants.

Belli, Ashe & Gerry and Lou Ashe for Plaintiff and Respondent.

DEVINE, J.—Plaintiff brought this action against the seller and the manufacturer of a chocolate bar, part of which she had eaten, and which was covered with worms and webbing. Originally, the complaint contained counts on negligence and violation of the state and federal Pure Food and Drug Acts, as well as upon warranties of fitness and of merchantability, but before trial plaintiff dismissed the counts other than those upon warranty. To all of the counts defendants pleaded contributory negligence, besides general denials.

The jury found a verdict of $25,000 for plaintiff against both defendants, judgment was entered thereon, and motion for new trial was denied. On appeal, defendants do not challenge the sufficiency of the evidence on breach of warranty, of causation, and of damages. The question on appeal is whether two instructions requested by defendants, and refused by the court, on the subject of care required of plaintiff, should have been given to the jury.

On the night of January 18, 1957, plaintiff, Mrs. Kassouf, purchased groceries at Lee Bros. Market in Hayward. She had·been a steady customer at Lee Bros. since the last part of 1954 or the first part of 1955. Among other things, Mrs. Kassouf purchased a medium size Hershey ''Mr. Goodbar,'' which is a nut chocolate bar. In making her selection, she looked in the general direction of the shelf on which the candy bars were stacked, picked one off, and put it in her shopping bag. She paid for the Goodbar and the other groceries, and returned to her home. On arriving home, Mrs. Kassouf took the Goodbar from the grocery bag and placed it on the dining room table. Shortly thereafter, she sat in a chair next to the table and began to read a newspaper. It was light in the room at the time. While reading, she reached with one hand and took the candy bar from the table. Without looking, and with one hand, she opened one end of the wrapper and slid the bar partially out from it. Using this one-handed method, she broke off pieces, one after another, and put them into her mouth.

From the outset she noticed that the bar ''didn't taste just right,'' but she assumed this was because she hadn't eaten all day. She had consumed about one third of the candy bar by the time she bit into a mushy worm. When she looked at the bar, she saw that it was covered with worms and webbing; worms were crawling out of the chocolate and the webbing had little eggs ''hanging onto it.'' Robert Martens, an insurance investigator, who was at the Kassouf residence on business, corroborated plaintiff's testimony. Mr. Kassouf also observed the condition of the candy bar.

Mrs. Kassouf became nauseated. She went to bed, and woke up with cramps and diarrhea. There followed a long history of hospitalization, tests and intestinal disorders. Expert medical opinion produced by plaintiff was that ingestion of the contaminated candy had produced a chronic ulcerative colitis.

The refused instructions were: ''No. 20: You are instructed that it was incumbent upon plaintiff to take reasonable precautions for her own safety in the handling, inspection, and consumption of the Hershey 'Mr. Goodbar' at issue. You are further instructed that a failure on her part to meet such duty proximately contributing to her injury, if any, would defeat her right of recovery, even though you might find there was a breach of warranty on the part of defendants.'' ''No. 22: If you find from the evidence that the plaintiff was guilty of negligence, amounting to the absence of ordinary care exercised by an ordinarily prudent person, and that such negli-

gence contributed proximately, in any degree, to the accident, it will prevent his right to recover damages against the defendant.''

 Instruction No. 20 may be dealt with rather summarily. It contains no definition of the degree of care which the profferer claims to be required of plaintiff. Is it ordinary care? Slight care? What is meant by ''reasonable precautions''? Besides, we deem it to be in outright error in its postulate that precautions must be used in the ''handling'' and ''inspection'' of the candy bar. This would include, presumably, a duty to look before biting into the bar, and even, perhaps, to feel the bar before eating. We believe there is no such duty. One can fancy the consternation among packaged candy makers and sellers if a statute were proposed which would require labels on candy bars warning the buyer to look before eating because worms or vermicular eggs might be present. The warranty imposed by law, which is discussed below, and the efficiency in modern processes of manufacturing, packaging and merchandising of such food products as candy bars, has long since removed responsibility, if there ever was any, of a purchaser to inspect them before eating.

Instruction No. 22 charges plaintiff with exercising ordinary care, without description of the acts to be done with care, and appellants argue that this subject should have been brought before the jury, because it was proper argument for the defense that at least from the moment when plaintiff noticed that the bar ''didn't taste just right,'' which was when she first started chewing it, she was obliged to use ordinary care. We shall put aside possible exceptions to this instruction, that it was not limited to the time commencing with plaintiff's noticing the taste, and that the pleading of negligence on the part of plaintiff was broad, namely, negligence ''in and about the matters referred to in said complaint,'' as stated in the seller's answer, and failure to exercise ordinary care ''in inspecting said candy bar, and by allegedly eating said candy bar,'' in the manufacturer's answer. Likewise, we are willing to assume that it could be lack of ordinary care for plaintiff to have continued eating the bar after she noticed that it didn't taste just right, and that if she did have the duty of ordinary care, defendants had the right to have this theory presented to the jury.

This brings us to the question whether fault of the plaintiff is a defense in a food warranty case. Fault of the

plaintiff in the form of assumption of risk was not pleaded by the defendants, and it is the law that it must be pleaded specifically unless it appears from the facts alleged in the complaint or unless the case has been tried as if the issue were pleaded. (*Inouye* v. *Pacific Gas & Elec. Co.*, 53 Cal.2d 361, 367 [1 Cal.Rptr. 848, 348 P.2d 208].) ▮▮ Defendants did not request any amendment to their answers to set up the defense of assumption of risk, nor did they request any instruction on the subject, nor did they otherwise, so far as appears from the record, make it an issue at the trial. The defense of assumption of risk, if it could have been raised by the defendants, is not now available to the appellants. (*Florez* v. *Groom Development Co., Inc.*, 53 Cal.2d 347, 360 [1 Cal.Rptr. 840, 348 P.2d 200].) In Lee Bros.' brief, however, the contention is made that the jury, if instructed as requested, could have inferred that plaintiff actually discovered the danger, either before commencing to eat the bar or during the course of ingesting it, but nevertheless proceeded to consume it. This theory is that of assumption of risk, which exists only where there exist elements of actual, not merely constructive knowledge, and appreciation of the danger and voluntary acceptance of the risk. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904].) As a practical matter, probably appellants could not have convinced the jury that plaintiff consumed the candy bar in its revolting condition with actual knowledge and appreciation of the danger; anyway, the issue was not properly advanced.

It is our decision that contributory negligence would not be a defense. This issue, unlike that of assumption of risk, actually was raised by pleading and by the manner in which the case was tried. ▮▮ Contributory negligence, in general, is a defense only to actions grounded on negligence. (2 Harper and James, The Law of Torts, § 22.4, p. 1210.) This is the sense of the definition of contributory negligence as given in California Jury Instructions, Civil, No. 103: "Contributory negligence is negligence on the part of a person injured, which, cooperating with the negligence of another, helps in proximately causing the injury of which the former thereafter complains." (*Freeman* v. *Churchill*, 30 Cal.2d 453, 458 [183 P.2d 4].)

▮▮ Plaintiff's action was not based upon the negligence of defendants, but upon breach of the implied warranty of fitness for the purpose for which the product was purchased. (Civ. Code, § 1735.) This section imposes an absolute liability, regardless of negligence, in the sale of foods. (*Vac-*

*carezza* v. *Sanguinetti,* 71 Cal.App.2d 687, 689 [163 P.2d 470] ; *Gindraux* v. *Maurice Mercantile Co.,* 4 Cal.2d 206 [47 P.2d 708] ; *Jensen* v. *Berris,* 31 Cal.App.2d 537 [88 P.2d 220].)

 Appellants make the point that the law for breach of implied warranty sounds in tort rather than in contract. (*Gottsdanker* v. *Cutter Laboratories,* 182 Cal.App.2d 602, 606 [6 Cal.Rptr. 320].) From the fact that the action sounds in tort (at least for the purpose of not requiring privity), it does not follow that contributory negligence is a defense. We cite two examples of tort cases where contributory negligence is no defense. Where defendant has an absolute liability because of an ultrahazardous activity, an instruction on contributory negligence, phrased in the language used in an ordinary negligence case, is improper, plaintiff being barred only if he intentionally or negligently causes the activity to miscarry, or after the knowledge that it has miscarried or is about to miscarry, he fails to exercise reasonable care to avoid harm threatened thereby. (*Luthringer* v. *Moore,* 31 Cal.2d 489, 499, 501 [190 P.2d 1].) Fraud and deceit is a tort but contributory negligence is no defense thereto. (*Security-First Nat. Bank* v. *Earp,* 19 Cal.2d 774, 777 [122 P.2d 900].)

It would derogate from the warranty, which under section 1735 of the Civil Code the defendants have given to plaintiff, if contributory negligence were a defense, because instead of having an implied affirmation that the food is reasonably fit for human consumption, plaintiff would have an affirmation only that it was fit to be consumed in the exercise of ordinary care for her own protection.

The case has called for our decision only on the subject of food products, and the decision is limited to that subject.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 8, 1963.