**ANN BRONSON AND ROGER BRONSON, Plaintiffs**

**v.**

**CLUB COMANCHE, INC., Defendant**

Civil No. 109-1967

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

June 29, 1968

*See, also, 286 F.Supp. 21*

James, Hodge & Tonkin (Ronald H. Tonkin), Christiansted, St. Croix, Virgin Islands, *for plaintiffs*

Young, Isherwood, Gibbs & Carney (Robert Carney), Christiansted, St. Croix, Virgin Islands, *for defendant*

MARIS, *Circuit Judge*

### OPINION ON MOTION FOR NEW TRIAL

The plaintiffs, Ann Bronson and her husband Roger Bronson, brought this action against the defendant Club Comanche, Inc., for compensation for pecuniary loss and

for damages resulting from fish poisoning suffered by Mrs. Bronson after eating fish in defendant's restaurant. The case was tried to a jury. At the trial Mrs. Bronson testified that she had been invited, with others, on March 4, 1967 to dine at defendant's restaurant in Christiansted; that she ordered a fish platter and when it was served she did not know or have any means of knowing that the fish was poisonous; that she became violently ill that night and suffered severe pain, vomiting and diarrhea; that she lost her appetite, was unable to properly eat or digest her food for a long time thereafter and lost considerable weight; and that she was considerably weakened and unable to attend to her duties connected with her work and as a housewife. Upon cross-examination, Mrs. Bronson, who has resided in the Virgin Islands since 1948, admitted that she was aware that other persons had contracted fish poisoning in the Virgin Islands.

Mrs. Bronson was treated by Dr. Magda G. Pendall, who was called as a witness by the plaintiffs. Dr. Pendall testified in respect to Mrs. Bronson's illness and described the symptoms and results. The diagnosis was that Mrs. Bronson had suffered from fish poisoning resulting from eating fish carrying a toxin which Dr. Pendall identified as "ciguatera fish poison", a serious and sometimes fatal disease.

It appears that occasional individual fish of certain species in the Caribbean and Pacific areas carry the toxin. The disease is characterized by nausea, vomiting, diarrhea, cramps in the extremities, muscle weakness, sweating, chills and fever. The skin becomes flushed, there is a tingling and severe itching, metallic or peppery taste in the mouth, a generalized inability to coordinate, and a general complaint of hot objects being cold and cold objects being hot. In severe cases, loss of speech, respiratory and body paralysis, coma and death may result. When the poison

does exist in a particular fish, neither care in the handling or selection of the fish reveals the presence of the toxin, nor does cooking destroy the poison.[1]

The theory of the plaintiffs' suit was that the defendant breached its implied warranty that the fish served was clean, wholesome, free from harmful and injurious foreign substances and fit for human consumption. The theory of the defense was that Mrs. Bronson, in ordering a fish platter in defendant's restaurant, had assumed the risk since as a long time resident of St. Croix she knew that occasionally persons eating fresh fish do suffer from fish poisoning. I submitted the case to the jury on these two general theories. The jury rendered a verdict for the defendant and judgment was thereupon entered dismissing the plaintiffs' action on the merits.

The plaintiffs have filed a motion for a new trial, asserting that I erred in charging the jury that if they found that Mrs. Bronson had knowingly assumed the risk of eating fish carrying the ciguatera poison it would be a good defense to the action. Assuming that my charge on assumption of risk was erroneous they urge that I should have directed a verdict for the plaintiff on the question of liability. I have carefully considered these contentions but find no merit in them.

▆▆▆ This action is based upon the liability of the defendant who, as a vendor of food, is deemed by statute to have impliedly warranted the fish to be wholesome and fit for human consumption. This liability is defined by section 2–314 of the Virgin Islands Uniform Commercial Code, Title 11A, V.I.C., which provides, in pertinent part:

"(1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale

---

[1] Memorandum, dated May 25, 1966, issued to all physicians of the Virgin Islands Department of Health by the Poison Control Center of the Government of the Virgin Islands.

if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as . . .
. . .

"(c) are fit for the ordinary purposes for which such goods are used; . . .

. . . ." [11A V.I.C. § 2–314]

The implied warranty of a restaurant keeper under the statute is that the food he serves his customers is wholesome, contains no deleterious substances and is fit for human consumption.[2] The implied warranty imposes a strict liability upon him making him liable to his customers even though in the exercise of all possible care in the purchase and preparation of the food he could not discover its unwholesome nature.[3] It is immaterial that the injured patron is not the person who paid for the meal. He is entitled to the benefit of the implied warranty of fitness even though another person paid for it.[4] These principles were given to the jury in my charge and no objection to that portion of the charge was made by either party.

■■■ As I have already indicated the question which is raised is whether on the facts of this case the defense of assumption of risk was available to the defendant. It is clear that since the liability is not based upon the negligence of the restaurant owner, but is rather a strict liability based upon the warranty of fitness which the law implies, contributory negligence is not available as a defense when such negligence consists merely in the failure to discover the defect in the product. On the other hand, the

---

[2] Decker & Sons v. Capps, 1942, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Ray v. Deas, 1965, 112 Ga. App. 191, 144 S.E.2d 468; Levy v. Paul, 1966, 207 Va. 100, 147 S.E.2d 722; Annotations, 7 A.L.R.2d 1027, 77 A.L.R.2d 7; 35 Am. Jur. 2d Food § 88; Prosser, Torts, 3d ed. 1964, ch. 14. See, also, Kenower v. Hotels Statler Co., 6 Cir. 1942, 124 F.2d 658.

[3] Restatement 2d, Torts § 402A(2)(a).

[4] Conklin v. Hotel Waldorf Astoria Corporation, 1957, 5 Misc. 2d 496, 161 N.Y.S.2d 205; Restatement 2d, Torts, § 402A(2)(b).

form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and which is commonly called assumption of risk, may be a defense in a case of strict liability such as this. If the consumer is fully aware of the danger and nevertheless proceeds voluntarily to make use of the product and is injured by it he is barred from recovery.[5] This has sometimes, perhaps more accurately, been described as ceasing to place any reliance on the implied warranty rather than as assuming the risk.[6] The evidence of Mrs. Bronson herself was that she knew that occasional cases of ciguatera fish poisoning occurred in the Virgin Islands. I accordingly charged the jury that if they found that Mrs. Bronson assumed the risk of eating a piece of fish which had ciguatera poison in it, knowing that this was a possibility when she ordered the fish and ate it, their verdict should be for the defendant. I am satisfied that I did not err in doing so.

Under the circumstances I do not reach the question whether I should, or could, have directed a verdict for the plaintiff on the question of liability.

The motion for a new trial will be denied.

---

[5] Restatement 2d, Torts, § 402A, Comment n; Louisville & N.R. Co. v. Travis, 1915, 192 Ala. 453, 68 So. 342, 343; Silverman v. Swift & Co., 1954, 141 Conn. 450, 107 A.2d 277, 278; Prosser, Law of Torts, 3d ed. 1964, p. 539.

[6] Barefield v. LaSalle Coca-Cola Bottling Company, 1963, 370 Mich. 1, 120 N.W.2d 786, 788–789; Annotation 4 A.L.R.3d 501, 505, 510–511.