**Samuel S. BEVARD et al., t/a Silver Hill Concrete Co., Appellants,**

v.

**HOWAT CONCRETE COMPANY, Inc.**

No. 23309.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1970.

Decided July 9, 1970.

Mr. Leonard B. Sussholz, Washington, D. C., for appellants.

Mr. Harry L. Ryan, Jr., Washington, D. C., for appellee.

Before TAMM, MacKINNON and ROBB, Circuit Judges.

PER CURIAM:

Samuel S. Bevard, trading as Silver Hill Concrete Co. (hereinafter seller), sold to Howat Concrete Company, Inc. (hereinafter buyer) concrete which was warranted to have a minimum compressive strength of 3,000 pounds per square inch for buyer's use in the construction of the roof deck of a parking garage. Due to a defect in the process by which air was added to and entrained in the concrete at seller's mixing plant, the concrete was defective in that it contained too much air, with the result that it did not measure up to the minimum requirements of the contractor and had to be replaced at great expense. Buyer refused to pay seller on an open account the amount which buyer determined it had lost as a result of the seller's breach of warranty. Seller sued in the district court to recover the amount due it on the open account, alleging that buyer was at fault because it was on notice that the concrete was defective, due to tests run at the site of the pour, but nevertheless used the concrete.

The district judge made the following relevant findings of fact and conclusions of law:

*Findings of Fact*

6. On September 21, 1965, Silver Hill had a loader on duty at its Terra Cotta plant who was charged with the responsibility of accurately measuring the sand, cement, water, Solite and air entraining agent. * * * The concrete delivered from the Silver Hill plant on this day tested well below the specified 3000 p.s.i.

7. * * * [A]ll mixing thereof was done under the direct control of Silver Hill's loader.

\* \* \* \* \* \* \*

9. Tests were made at the job site of the concrete which had originated at

both plants. These tests indicated that concrete originating at Silver Hill's plant contained air in excess of normal bounds and which, by experience of the testers, would be likely to preclude the concrete from reaching required strength in 28 days, this being the ultimate criteria [*sic*]. Such preliminary tests are not fully determinable, and 7 and 14 day tests are required and may signal problems, but *it is established that until 28 actual days have elapsed for proper curing, final minimum strength may be indicated but cannot be definitely established.*

10. Prompt notice of the excessive air content was communicated to Silver Hill which was requested to decrease the quantity of the air entraining agent, and finally a request was made that it be completely eliminated. However, excessive air content was still encountered in some of the concrete originating at Silver Hill's plant. * * * *Such excessive air content resulted from deviation by Silver Hill in complying with the design formula designated on order tickets from Howat to Silver Hill.*

11. The concrete was poured into the slab area as delivered to the job, the entire operation taking about half a day. * * * The concrete failed to reach its required strength within 28 days and was rejected by the Architect, and corrective measures were demanded. * * *

\* \* \* \* \* \*

### Conclusions of Law

1. This action is basically determined by * * * the Uniform Commercial Code. * * *

\* · \* \* \* \* \*

3. * * * [P]laintiff had been provided a formula for mixing such * * * concrete which, if properly followed, would have produced 3000 lb. Solite concrete, and *plaintiff is solely responsible for all damages reasonably flowing from the failure of its product to comply with the requisite strength tests.*

4. *The failure * * * constituted breaches of warranty by plaintiff as to its product. * * ** 

(J.A. 4–13; emphasis added.)

We have reviewed each of appellant's contentions and conclude that there was sufficient evidence before the trial judge to justify the above-quoted findings of fact and conclusions of law, and that none of appellant's contentions requires requires reversal of the judgment of the district court. While it might have been a better procedure for the purchaser to refrain from using the concrete when it was suspected that it might not meet the strength requirements, such initial indications are very inconclusive, and it is only after the full 28 day curing period has elapsed that the true strength of the concrete will be revealed. Under these circumstances, we are not willing to say that use of the concrete constituted a negligent or malicious act on the part of the buyer so as to absolve the seller from its breach of warranty.

It being clear that the warranty sections of the Uniform Commercial Code apply,[1] and there being an abundance of evidence in the record to support the trial judge's findings and conclusions,[2] the judgment of the district court is

Affirmed.

---

1. 28 D.C.Code §§ 2–313, 2–314, 2–315 (1967).

2. We have carefully examined the sections of the Uniform Commercial Code relating to mitigation of damages and, as a result of the trial judge's finding No. 9 relating to the impossibility of determining the defect until after 28 days had elapsed, we find these sections to be inapplicable to the current situation, it being impossible for the buyer to ascertain fully the defect before making the pour, and it being impossible for him to alter the poured concrete in any way after the defect was confirmed in order to mitigate the damage which proximately resulted therefrom. *See* 28 D.C.Code §§ 2—714 and 2—715 (1967).