GLENN GREGORY *v.* WHITE TRUCK & EQUIPMENT CO., INC.

[No. 2-473A89. Filed February 20, 1975.]

*Thomas L. Davis,* of Indianapolis, *J. Richard Marshall, Dennis, Cross, Raisor, Jordan & Marshall,* of Muncie, for appellant.

*Charles R. Clark, White, Pierce, Beasley & Gilkison* of Muncie, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Plaintiff-Appellant Glenn Gregory (Gregory) appeals from an adverse judgment in a products liability action (fifth wheel assembly) in which he sought damages for negligence and breach of implied warranty against Defendant-Appellee White Truck & Equipment Company (White), claiming the trial court erred in directing a verdict on the negligence claim and in instructing the jury that contributory negligence is a defense to an action for breach of warranty.

We reverse.

## FACTS

The facts and evidence most favorable to Gregory (the party against whom the judgment on the evidence was sought and entered) are:

In February of 1964 Gregory purchased from White a new Reo diesel cab-over tractor for $22,896.00, which he intended to use in his freight hauling business.

As part of the sale, White agreed to install on the tractor a semi-trailer hitch, commonly known as a fifth wheel assem-

bly. Having had no experience in installing such devices, Gregory authorized White to attach it to the tractor in the proper manner.

White selected a Holland brand fifth wheel assembly to install on the new tractor. In order to do so the fifth wheel assembly (which had been taken from another tractor) was attached to the frame of the tractor by means of ears or tabs designed to extend over the edge of the frame of the tractor. These "ear tabs" were then bolted to the frame. The assembly contained pre-drilled holes bored by the manufacturer so that "U-bolts" could be utilized to fasten the fifth wheel assembly to the frame of the tractor. No U-bolts or other securing device, such as spacer bar clamps, were used to fasten the assembly to the tractor frame.

When the assembly was placed on the tractor frame, it was discovered that it was not wide enough to attach to the frame. White therefore adapted the assembly to fit the tractor frame by removing the ear tabs and re-welding them at a different location on the assembly. The tabs were then bolted to the tractor frame.

On at least three occasions after Gregory's purchase of the tractor, he discovered that the ear tabs had broken loose at the point where they had been re-welded to the assembly; and on each occasion he returned the tractor to White who re-welded them to the assembly.

Then on July 20, 1965, Gregory was towing a cargo laden semi-trailer with the tractor over a two lane highway in Pennsylvania at a speed of approximately forty miles per hour (the posted speed limit). As Gregory approached a slight left-hand curve in the road, the tractor, suddenly and without warning, would not steer left into the turn, and, with its front tires screaming, continued forward off the pavement.

At trial, Gregory testified that the next thing he remembered the tractor was upside down in a ditch at the side of the highway and the semi-trailer, which had separated from the tractor, came to rest approximately seventy-five feet behind the tractor.

After the accident it was determined that the fifth wheel assembly had broken off of the tractor frame at the point where the ear tabs had been re-welded. It was attached to the frame of the trailer. The severed ear tabs remained on the frame of the tractor.

Gregory also testified that the trailer made imprints on the asphalt pavement of the highway and that from his analysis of the rapid chain of events, the trailer had separated from the tractor while in motion on the highway and dropped to the road causing the tractor to lurch forward from underneath the trailer and careen off the highway into the ditch.

Gregory's third amended complaint filed on December 15, 1969, sought $28,000.00 for damages to the cargo, trailer and tractor. The complaint proceeded upon two theories:

(1) Negligence of White in installation of the fifth wheel assembly, and

(2) Breach of an implied warranty of fitness for particular purpose.[1]

At trial, Gregory produced two expert witnesses. One, Roy Elton, testified that he always used additional securing devices besides tabs and welds in installing fifth wheel assemblies. On cross examination, however, Elton stated that securing an assembly by use of welded ear tabs only is considered proper if the tabs are welded properly.

The other expert witness, Jack Morris, stated it was his opinion that it was necessary to use U-bolts in addition to ear tabs to fasten a fifth wheel assembly to the tractor frame, and that such practice is recognized as a necessity by a majority of truck dealers.

After Gregory rested his case White moved for a judgment on the evidence in its favor as to both negligence and breach of warranty theories, alleging that Gregory failed to show

---

1. Uniform Sales Act, Ind. Ann. Stat. § 58-115 (Burns 1961 Repl.); for present law see Uniform Commercial Code, IC 1971, 26-1-2-315, § 19-2-315 (Burns 1964 Repl.). See ISSUE TWO, *infra*.

that the accident was proximately caused by its alleged wrongful conduct or defective installation.

The trial court denied White's motion as to the breach of warranty claim, but granted it as to negligence, finding that Gregory failed to establish that his damages were proximately caused by White's negligent installation of the fifth wheel assembly.

The case then proceeded on the breach of warranty claim only.

As a defense witness, White produced Pennsylvania State Trooper Titus who was present at the scene of the accident. He testified that Gregory admitted to traveling about fifty miles per hour at the time the tractor trailer went out of control (ten miles per hour in excess of the speed limit in that vicinity). Over objection, Titus expressed his opinion that Gregory's excessive speed caused loss of control.

At the close of all the evidence, and over Gregory's objections, the trial court read the following instructions to the jury relating to Gregory's "contributory negligence":

*Instruction No. 3*

"The plaintiff has the burden of proving the following propositions:

First: That defendant breached on implied warranty of fitness for the particular purpose.

Second: That the plaintiff's property was damaged.

Third: That the breach of implied warranty of fitness for the particular purpose was the proximate cause of damage to the plaintiff's property.

If you find from a consideration of all the evidence that these propositions have been proved then your verdict should be for the plaintiff. However, if you find from a consideration of all the evidence that any of these propositions have not been proved, or if you find that plaintiff himself was guilty of contributory negligence, your verdict should be for the defendant."

*Instruction No. 5*

"The Court instructs you that contributory negligence

is a defense to a claim for breach of implied warranty, and contribtuory negligence is defined as follows:

Contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to himself which failure is a proximate cause of the damages for which he seeks to recover."

*Instruction No. 6*

"The question of contributory negligence on the part of the plaintiff is an issue in this case. If plaintiff was guilty of negligence that proximately contributed to his damage, then plaintiff cannot recover even though the defendant may have breached implied warranty of fitness for particular purpose.

The defendant has the burden of proving by a preponderance of the evidence that plaintiff was guilty of such negligence."

The jury returned a verdict for White on the breach of warranty claim.

Gregory appeals.

## ISSUES[2]

As this cause must be reversed and remanded for a new trial, it is desirable that two of the three issues raised by Gregory be considered:

### ISSUE ONE

Did the trial court err in entering judgment on the evidence against Gregory on his negligence claim?

### ISSUE TWO

Did the trial court commit reversible error by instructing the jury that contributory negligence on Gregory's part would defeat his right to recover damages due to White's alleged breach of an implied warranty?

As to ISSUE ONE, Gregory contends that there was adequate evidence presented by him to support a reasonable

2.   Gregory raises an issue as to the admissibility of the opinion testimony of Officer Titus relating to Gregory's speed, which we need not reach.

inference that White negligently installed the fifth wheel assembly by faulty re-welding or by failing to install spacer bars or U-bolts (or both), and that such negligence proximately caused the trailer's separation from the tractor and the property damage resulting therefrom.

White claims that no evidence was presented which would permit a legitimate inference by the jury that Gregory's accident was proximately caused by any negligent installation of the fifth wheel assembly. To do so would require an inference on an inference.

As to ISSUE TWO, Gregory contends that contributory negligence, as broadly defined by the trial court in its instructions, is not a defense to an action based upon breach of an implied warranty, and that he was therefore prejudiced by the instructions which adopted contributory negligence as an affirmative defense.

White's position is that the term "contributory negligence" adequately describes the type of conduct on the part of a plaintiff in a breach of warranty action that will bar recovery, and the instructions were a proper statement of the law.

## DECISION

### ISSUE ONE

CONCLUSION—There was some evidence presented by Gregory sufficient to support a reasonable inference of negligence by White and therefore the case should not have been taken from the jury.

It is often said that in a jury trial a court should not direct a verdict for a defendant at the close of a plaintiff's evidence unless there is total absence of evidence or reasonable inference on at least one essential element of a plaintiff's case. *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 623, 230 N.E.2d 315, 318; *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N.E.2d 734; *Ecoff* v. *Central Indiana Gas Co.* (1968), 143 Ind. App. 119, 238 N.E.2d 676; *Stivers* v. *Old National Bank in Evansville* (1970), 148 Ind. App. 196, 264

N.E.2d 339; *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883.

The meager quantum of evidence necessary to avoid a directed verdict was described in *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 182-183, 275 N.E.2d 849 at 851:

> "When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. *Jones* v. *Furlong* (1951), 121 Ind. App. 279, 97 N.E.2d 369. *Where the evidence is such that the minds of reasonable men might differ*, or if the determination of negligence depends on conflicting evidence, then the question is for the jury." (Emphasis supplied) *Hatmaker* v. *Elgin, Joliet & Eastern Railway Company* (1956), 126 Ind. App. 566, 133 N.E.2d 86; *Heiny* v. *Pennsylvania Railroad Company* (1943), 221 Ind. 367, 47 N.E.2d 145; *Robertson Brothers Department Store* v. *Stanley* (1950), 228 Ind. 372, 90 N.E.2d 809; *Haney* v. *Meyer* (1966), 139 Ind. App. 663, 215 N.E.2d 886; *Oliver* v. *Clemons' Estate* (1968), 142 Ind. App. 499, 236 N.E.2d 72.

As the subject of avoidance of the quantum of evidence necessary to avoid a directed verdict was treated in some depth in *Mamula* we will not pursue the matter further here. *See also, Cheek* v. *Hamlin* (1972), 150 Ind. App. 681, 277 N.E.2d 620; *Fuller* v. *Wiles* (1972), 151 Ind. App. 417, 280 N.E.2d 59; *McClure* v. *Austin* (1972), 152 Ind. App. 398, 283 N.E.2d 783; *Farmer* v. *Werner Transportation Company* (1972), 152 Ind. App. 609, 284 N.E.2d 861; *Moster* v. *Bower* (1972), 153 Ind. App. 158, 286 N.E.2d 418; *Jones* v. *Indianapolis Power & Light Co.* (1973), 158 Ind. App. 676, 304 N.E.2d 337; *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701.

For a plaintiff's damages to be proximately caused by the negligent act of a defendant, the injuries need only be a natural and probable result thereof; the injurious consequences visited upon a plaintiff must be those which, in light of the circumstances, should reasonably have been foreseen or anticipated. *See, Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *Hayes Freight Lines, Inc.* v. *Wilson*

(1948), 226 Ind. 1, 77 N.E.2d 580; *Rimco Realty and Investment Corp.* v. *LaViene* (1943), 114 Ind. App. 211, 50 N.E.2d 953; *New York Central Railroad Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N.E.2d 502.

There was some evidence presented by Gregory to support a reasonable inference that his damages were proximately caused by White's failure to install the fifth wheel assembly securely to the tractor frame. He testified the trailer separated from the truck while it was in motion on the highway, as indicated by his inability to control the vehicle, the screaming tires, and the gouges in the pavement. It could be reasonably inferred that the separation was due to a breakage on the fifth wheel assembly which had been welded and re-welded by White or that reasonable safety precautions required the installation of additional fastening devices which were not employed by White, or both.

Had the jury room door been opened to Gregory the jury *could* have reasonably concluded from some of the evidence before it that White should have anticipated separation of the fifth wheel assembly from the tractor frame.

Viewed as a whole, there was some evidence from which negligence on the part of White could be reasonably inferred. It was a question for the jury. Failure to submit the negligence issue to the jury was reversible error.

ISSUE TWO

CONCLUSION—It is our opinion that contributory negligence as such is not a defense to an action for breach of implied warranty, and therefore Instructions Three, Five and Six were too broad.

Somewhat like Gulliver braving the waters between Lilliput and Blefuscu to capture the miniature enemy fleet, we have been forced to scour the "seas of warranty" to ascertain if the defense of contributory negligence may properly be asserted in an action for breach of implied warranty.

The kind of warranty relied on by Gregory in his Third Amended Complaint would appear to sound in contract as the

breach alleged resulted from a sale between a seller and buyer. Privity was present in a setting of commonly encountered principles of contract law. Chief Judge Hastings described the traditional concept of warranty in *Dagley* v. *Armstrong Rubber Co.*, 344 F.2d 245, 253 (7th Cir. 1965) :

> "The traditional concept of warranty is that the seller of a product expressly and impliedly warrants certain things concerning the product to the buyer. This warranty is a part of the contract between seller and buyer and thus has its basis in contract law. This traditional concept is not being superseded by the new concept and still requires privity of contract to be enforced."[3]

In addition to "traditional" warranty, another kind of "warranty" has emerged in recent years which is not considered as sounding in contract and does not involve privity between the parties. Judge Hastings also described the "new" warranty in *Dagley:*

> *"The new concept of warranty bases liability on strict liability in tort. This warranty 'is a very different kind of warranty from those usually found in the sale of goods, and * * * it is not subject to the various contract rules which have grown up to surround such sales.'* [quoting Restatement of Torts, 2d, Explanatory Notes § 402A, Comment c, at 349.]" (Emphasis supplied.) 344 F.2d at 253.

Professor Prosser sees it somewhat differently in that he conceives the new warranty as "a curious hybrid born of the illicit intercourse of tort and contract, unique in the law". Prosser, *Law Of Torts, supra,* p. 634.

Whatever the admixture of tort and contract in the new warranty, our concern ostensibly is with traditional warranty.

Gregory's claim arose in 1964 between parties in privity with each other and at a time when the Uniform Sales Act was in effect in Indiana. [Ind. Ann. Stat. § 58-115 (Burns 1961 Repl.) ]. The USA, like its successor, The Uniform Commercial Code, [IC 1971, 26-1-2-315, Ind. Ann. Stat. § 19-

---

3. Also see, Prosser, *Law of Torts*, § 95, p. 635 (4th Ed. 1971) :
"Thereafter the warranty gradually came to be regarded as a term of the contract of sale, express or implied, for which the normal remedy is a contract action."

2-315 (Burns Supp. 1974)] provides for an action by a buyer against the seller for breach of an implied warranty of fitness for a particular purpose (which is the allegation of Gregory's Complaint). While providing for an action for breach of implied warranty of fitness, neither the USA nor the UCC indicate the permissible defenses to such an action. As Professor Prosser states, "Neither of these statutes have been drawn with anything in mind but a contract between a "seller" and his immediate "buyer"." Prosser, *Law of Torts, supra,* p. 655. Presumably then only contract defenses are available.

So, with no guidance from either the Uniform Sales Act or the Uniform Commercial Code as to the defenses available in a breach of traditional warranty, we turn to Indiana case law for an answer, and there is none.

Appropriately we turn to the cases in other jurisdictions which have treated the subject of contributory negligence as a defense to an action for breach of warranty. Doing so propels us into an area of law which has variously been described as "permeated with semantic problems"[4] and "a question that masquerades in many costumes."[5]

While the cases appear to be hopelessly confused in use of such familiar terms as warranty, proximate cause, assumption of risk, and contributory negligence, a close examination, particularly of the more recent ones, indicates an emerging "consistent pattern." Professor Prosser put it this way:

> "It has been said very often that contributory negligence is never a defense to the strict liability. It has been said somewhat more often that it is always a defense. The disagreement, however, is a superficial one of language only, it is merely part of *the general murk that has surrounded 'warranty'. If the substance of the cases is looked to, with due regard to their facts, they fall into an entirely consistent pattern."* (Emphasis supplied) Prosser, *Law of Torts, Supra,* p. 670. *See also,* Prosser, *The Fall of the*

---

4. 4 ALR 3d 501 at 503—a leading authority in which cases on the subject have been assembled.

5. White & Summers, UNIFORM COMMERCIAL CODE, § 11-17, p. 335 (1st Ed. 1972).

*Citadel (Strict Liability To The Consumer)*, 50 MINN. L. REV. 791, 838 (1966).

This "consistent pattern" is characterized by a generalized disapproval of contributory negligence, in its broad sense, as a defense in warranty actions where there is no privity, (i.e., breach of the new warranty). Instead, the courts have offered more restrictive descriptions of the types of conduct which will bar relief.

Some authorities, including those cases in which courts have nominally adopted contributory negligence as a defense in warranty actions, suggest that the defense is not based on contributory negligence at all, but is actually a question of whether the plaintiff has established the element of causation, i.e., whether the injuries resulted from the breach of warranty or the plaintiff's own conduct as the sole proximate cause. *See, e. g., Dallison* v. *Sears Roebuck & Co.*, 313 F.2d 343 (10th Cir. 1962) ; *Erdman* v. *Johnson Bros. Radio & Television Co., Inc.* (1970), 260 Md. 190, 271 A.2d 744, 8 U.C.C. Rptr. 656 ; *Murphy* v. *Eaton, Yale & Towne, Inc.*, 444 F.2d 317 (6th Cir. 1971), 8 U.C.C. Rptr. 805 (applying Michigan law) ; *Texsun Feed Yards, Inc.* v. *Ralston Purina Co.*, 447 F.2d 660 (5th Cir. 1971) 9 U.C.C. Rptr. 210 ; *Coleman* v. *American Universal of Florida, Inc.* (1972), Fla. App., 264 So.2d 451, 10 U.C.C. Rptr. 1384 ; *Firestone Tire & Rubber Co.* v. *Jackson Transportation Co.* (1972), 126 Ga.App. 471, 191 S.E.2d 110, 11 U.C.C. Rptr. 311. *See also,* 4 A.L.R. 3rd 501, at 505 ; White & Summers, *UNIFORM COMMERCIAL CODE, supra,* p. 336.

Other authorities have resolved the question of delineating specific types of plaintiff conduct which bar relief. The most often referred to of these is a plaintiff's voluntary and unreasonable encounter of a known risk relating to the defective product, a form of conduct which passes more or less indiscriminately as "assumption of risk", "incurred risk", or is passed off as an aspect of contributory negligence :

"There now appears to be virtual agreement, among the authorities, that a defendant should be permitted to prove

as a defense to *strict liability* [as applied in a breach of warranty action] that *the plaintiff discovered the defect, realized the danger which it possessed, but nonetheless wilfully and unreasonably proceeded on a course of conduct* leading to his injury." (Emphasis supplied.) *Bachner* v. *Pearson* (1970), AR, 8 U.C.C. Rptr. 515.

*See also,*

> Prosser, *The Fall of the Citadel Strict Liability To the Consumer, supra,* p. 838: "[Recovery will not be barred if] the negligence of the plaintiff consists only in failing to discover the danger in the product or to take precautions against its possible existence. . . . Noel, *Defective Products: Abnormal Use, Contributory Negligence, and the Assumption of Risk,* 25 VAND. L. REV. 93 (1972) ; *Bronson* v. *Club Comanche, Inc.* (D.C. Virgin Islands 1968), 286 F.Supp. 21, 5 U.C.C. Rptr. 694. [Citing 4 A.L.R.3rd 501 at 510-511] ; *Erdman* v. *Johnson Bros. Radio & Television Co., Inc., supra; Vernon* v. *Lake Motors* (1971), 26 Utah2d 269, 9 U.C.C. Rptr. 777 ; *Burkhimer* v. *W. B. Lindsay Furniture Co.* (1971), 12 N. C. App. 254, 182 S.E.2d 834, 9 U.C.C. Rptr. 1030 ; *Huebert* v. *Federal Pacific Electric Co., Inc.* (1972), 208 Kan. 720, 494 P.2d 1210, 10 U.C.C. Rptr. 545 ; *Hensley* v. *Sherman Car Wash Equipment Co.* (1974), 33 Colo. App. 279, 520 P.2d 146, 14 U.C.C. Rptr. 940.

Also is it established that a plaintiff will be barred from recovery if he misuses the article warranted, such misuse often being referred to as one aspect of assumed or incurred risk. In a strict liability context, this Court in *Perfection Paint & Color Co.* v. *Konduris* (1970), 147 Ind. App. 106, 119, 258 N.E.2d 681, 689, spoke of misuse:

> "A legal description of those acts which constitute a 'misuse' of a product has proven to be difficult to achieve. The problem appears to us to be one of failing to differentiate between misuse of a product which does not exhibit any defective condition until misused, or which does not appear to be defective and unreasonably dangerous, and *misuse of a product when the defective and unreasonably dangerous condition is either discovered by the consumer or brought to his attention by a legally sufficient warning.* While in either situation a product is being misused, the former constitutes the true category of misuse while the latter form

of misuse is tantamount to the traditional concepts of incurred or assumed risk." (Emphasis supplied.)

One may reasonably conclude from existing case law that a plaintiff claiming breach of the new warranty may be defeated by showing that (1) his injuries were caused *solely* by his own conduct, in whatever form, (2) he voluntarily and unreasonably proceeded to encounter a known risk arising out of the defect [assumed or incurred risk][6] or (3) he misused the product in question. From careful analysis of case law it may also reasonably be concluded that *all* forms of contributory negligence by a plaintiff do not defeat his recovery. *See, Schneider* v. *Suhrmann* (1958), 8 Utah 2d 35, 327 P.2d 822; *Barefield* v. *LaSalle Coca Cola Bottling Co.* (1963), 370 Mich. 1, 120 N.W.2d 786; *Kassouf* v. *Lee Bros., Inc.* (1962), 209 Cal. App.2d 568, 26 Cal. Rptr. 276; *Brown* v. *Chapman,* 304 F.2d 149 (9th Cir. 1962); *Merrimac Chemical Co.* v. *American Tool & Mach. Co.* (1906), 192 Mass. 206, 78 N.E. 419; *Razey* v. *J. B. Colt Co.* (1905), 106 App. Div. 103, 94 N.Y.S. 59; *Natale* v. *Pepsi Cola Co.* (1959), 7 App. Div.2d 282, 182 N.Y.S.2d 494; *Rasmus* v. *A. O. Smith Corp.,* 158 F.Supp. 70 (D.C. Iowa 1958); *Fredendall* v. *Abraham & Straus, Inc.* (1938), 279 N.Y. 146, 18 N.E.2d 11; *Young* v. *Aeroil Products Co.,* 248 F.2d 185 (9th Cir. 1957); *Arnaud's Restaurant, Inc.* v. *Cotter* 212 F.2d 883 (5th Cir. 1954); *Vassallo* v. *Sabatte Land Co.* (1963), 212 Cal. App.2d 11, 27 Cal. Rptr. 814; *Erdman* v. *Johnson Bros. Radio & Television Co., Inc., supra; Texsun Feed Yards, Inc.* v. *Ralston Purina Co., supra; Vernon* v. *Lake Motors, supra; Burkhimer* v. *W. B. Lindsay Furniture Co., supra; Huebert* v. *Federal*

---

6. In Indiana, courts have repeatedly cautioned against equating such "assumed or incurred" risk with contributory negligence. *See, Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N.E. 315; *Stallings* v. *Dick* (1966), 139 Ind. App. 118, 210 N.E.2d 82; *Indiana Natural Gas & Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, 65 N.E. 918; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N.E.2d 836; *Christmas* v. *Christmas* (1974), 159 Ind. App. 193, 305 N.E.2d 893.

For the distinction between incurred and assumed risk, *see, Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883; *Collins* v. *Grabler* (1970), 147 Ind. App. 584, 263 N.E.2d 201.

*Pacific Elec. Co., Inc., supra; Hensley v. Sherman Car Wash Equip. Co., supra.*

Having reasoned that existing case law does not justify assertion of contributory negligence as a defense to an action for breach of the new warranty, we now examine the propriety of such a defense in an action for breach of traditional warranty . . . and find the case law to be sparse.

The only case our research has produced which directly holds that contributory negligence is not a defense by a defendant seller to an action for breach of traditional warranty is *Bronson v. Club Comanche, Inc.,* 286 F.Supp. 21 (D.V.I. 1968). Plaintiff buyer became ill from eating poisonous fish at the defendant's restaurant. Rejecting the defense of contributory negligence, the court said:

> *"It is clear that since the liability is not based upon negligence of the restaurant owner, but is rather a strict liability based upon the warranty of fitness which the law implies, contributory negligence is not available as a defense* when such negligence consists merely in the failure to discover the defect in the product. On the other hand, the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and which is commonly called assumption of risk, may be a defense in a case of strict liability such as this." 286 F.Supp. at 23. (Emphasis supplied.)

The court neither cites authority nor gives any reason to support its conclusion and we can only speculate that it has "its basis in contract law", described by Judge Hastings in *Dagley v. Armstrong Rubber Co., supra.*

There are other cases which by way of dicta accept the principle that contributory negligence as such is not a defense to a breach of warranty action where privity exists. *See, Webster v. Blue Ship Tea Room, Inc.* (1964), 347 Mass. 421, 198 N.E.2d 309; *Dallison v. Sears, Roebuck & Co., supra; Williams v. Brown Mfg. Co.,* 93 Ill. App. 2d 334, 236 N.E.2d 125; *O. S. Stapley Co. v. Miller* (1967), 6 Ariz App. 122, 430 P.2d 701; *Pizza Inn, Inc. v. Tiffany* (1970), Tex. Civ. App., 454 S.W.2d 420; *Jacobs Pharmacy Co. v. Gipson,* 116 Ga. App.

760, 159 S.E.2d 171; *Brockett* v. *Harrell Bros., Inc.* (1965), 206 Va. 457, 143 S.E.2d 897.

To rest a decision that the defense of contributory negligence may not be asserted in an action for breach of traditional warranty on the sole ground that warranty has its basis in contract law would be to rely on a slender reed indeed. If for no other reason to do so would be dangerous because there is authority for the position that warranty has as many of its roots in tort law as it does in contract law. *See,* for example, Prosser, *Law of Torts, supra,* pp. 616-17, 634-35:

> "Unlike other elements of a contract, warranty never has lost entirely its original tort character."
>
> *See also,*
> *Nelson* v. *Anderson* (1955), 245 Minn. 445, 72 N.W.2d 861.

Interestingly, the framers of 402A of Restatement, Second Torts, in imposing strict liability on a seller of defective products, eliminated the word "warranty" entirely, thereby adopting a more immaculate and usable concept. Whether the term warranty is eliminated or whether it is used in its new concept as a basis for strict liability in tort, most courts have reasonably concluded, usually by implication, that contributory negligence as traditionally defined by law is too broad a defense to assert in a breach of warranty action.

Section 402A of Restatement, Second Torts, explicitly strikes down contributory negligence in Comment (n):

> "*Contributory negligence of the plaintiff is not a defense* when such negligence consists merely of a failure to discover the defect of the product, or to guard against the possibility of its existence. On the other hand, the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." (Emphasis supplied.)

We are not prepared to completely eliminate the distinction

between the traditional concept of warranty and the "new" warranty. The Uniform Sales Act and its successor, the Uniform Commercial Code, are cast in terms of buyer and seller.

Logic would dictate that if the defense of contributory negligence is not available in an action for breach of the kind of—no privity—tort—warranty we have referred to as the new warranty, then even less should it be available as a defense for breach of the buyer and seller—contract—privity—kind of warranty called traditional warranty. Breach of warranty in either case is grounded on strict liability. *Bachner* v. *Pearson, supra; Bronson* v. *Club Comanche, Inc., supra; Hensley* v. *Sherman Car Wash Equipment Co., supra; Haralampopoulos* v. *The Capital News Agency, Inc.* (1966) 70 Ill. App.2d 17, 217 N.E.2d 366; *Brown* v. *Chapman supra; Pizza Inn, Inc.* v. *Tiffany, supra; Greeno* v. *Clark Equipment Co.,* 237 F.Supp. 427 (N.D. Ind. 1965) ; *Bevard* v. *Howart Concrete Co., Inc.,* 140 U.S. App. D.C. 96, 433 F.2d 1202, 7 U.C.C. Rptr. 966 (D.C. Cir 1970) ; *Wright-Bachman, Inc.* v. *Hodnett, et al.* (1956), 235 Ind. 307, 133 N.E.2d 713.

Such logic is fortified if "warranty" be accepted as a "curious hybrid . . . of tort and contract"—per Prosser.

Limitation of defenses in strict liability actions is supported by two Indiana cases—both involving the new warranty.

In *Cornette* v. *Searjeant Motor Prdcts.* (1970), 147 Ind. App. 46, 258 N.E.2d 652, Judge Hoffman recognized assumed or incurred risk as a defense to strict liability and adopted Restatement, Second Torts, § 402A, as the most desirable law for adoption in Indiana.

And in *Perfection Paint & Color Co.* v. *Konduris, supra,* this Court rejected contributory negligence as a defense:

> "Contributory negligence of plaintiff in failing to discover a defect in the product or on failure to guard against existence of a defect is not misuse of the product and is, therefore, not a defense to strict liability in tort."

And so having set sail on the murky seas of warranty, we at long last arrive in home port convinced that in an action

for breach of traditional warranty the defense of contributory negligence as such is not available. Only more specific forms of plaintiff's misconduct, such as assumption of risk and misuse of the product, may be relied upon by the defendant by way of defense.

Consequently, Instructions 3, 5 and 6 which repeatedly emphasized and broadly defined contributory negligence as constituting a defense to an action for breach of an implied warranty, are defective,[7] and the trial court's judgment should also be reversed for this reason.

The judgment of the trial court is therefore reversed and remanded for a new trial, and for further proceedings not inconsistent with this opinion.

Garrard, J., concurs; Sullivan, P.J., concurs in result only as to ISSUE ONE with statement and concurs as to ISSUE TWO.

### CONCURRING STATEMENT

SULLIVAN, P.J.—I concur in the result reached by the majority as to Issue I but cannot agree that a directed verdict may be avoided by "some" evidence in the sense that "some" means "any". *See Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849 (dissenting opinion) at 854.

I am able to agree that upon the evidence of record, the matter of defendant's negligence as a proximate cause of Gregory's damage should have been submitted to the jury but I am able to agree with little of what the majority states as

---

7. The scope of the instructions must be confined to the issues before the Court unless the record clearly shows that the giving of the instruction was harmless. Otherwise it will be considered prejudicial error:

"The propriety of an instruction is to be determined, not by whether it embodies a correct statement of the law upon a given state of facts, but whether it correctly states the law relevant to issuable facts given in the evidence of the trial." *N.Y. Central Railroad Co.* v. *Knoll* (1965), 140 Ind. App. 264, 206 N.E.2d 220; *Automobile Underwriters, Inc.* v. *Smith* (1956), 126 Ind. App. 332, 133 N.E.2d 72; *Stillwell* v. *Adams* (1963), 135 Ind. App. 495, 193 N.E.2d 74; *Callahan* v. *N. Y. Central Railroad Co.* (1962), 134 Ind. App. 232, 180 N.E.2d 547.

258

a legal basis for that conclusion. As to Issue I, I therefore concur in result only.

I concur in the opinion of my colleagues as to Issue II.